[Civ. No. 10909.   Third Dist.   Dec. 16, 1964.]

JAMES G. CHANGARIS, Plaintiff, v. ALVA MARVEL, Defendant and Respondent; CHARLES MARVEL et al., Defendants and Appellants.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Morgan D. Goldie for Defendants and Appellants.

Richard E. Crow for Defendant and Respondent.

VAN DYKE, J.*—By this appeal the adult children of the deceased, Jesse J. Marvel, Sr., challenge the court's distribution of the money paid by a defendant tortfeasor in a wrongful death action by way of compromise. James G. Changaris, an attorney, in behalf of five claimants, brought an action against the wrongdoer. The plaintiffs in that action were four surviving adult children of Marvel, Sr., and Alva Marvel, claiming as his widow. After payment of costs of litigation and attorney's fees there remained in the hands of Changaris the sum of $29,317.39 to be distributed among the five plaintiffs. Since they were in dispute Changaris interpleaded the five and was discharged from further activity and responsibility. The court in the interpleader action, after trial, rendered the judgment now on appeal.

The children of decedent, all of whom are adults and who for long had been independent of the decedent, sought herein to defeat entirely the claim of Alva to any part of the compromise fund upon the ground that she was neither the legal wife of decedent at the time of his death nor his putative wife. Alva and decedent had known each other since 1943, and Alva testified that she and decedent were married in Tiajuana, Mexico, in September 1947. Appellants challenged the validity of this marriage; indeed asserted that decedent had never been divorced from their mother and that she was living. She did not join in the death action. It is not disputed that decedent and Alva lived together until his death in February 1961, and during that period held themselves out as man and wife. Further, that they pooled their earnings, maintained joint bank accounts, purchased property in their joint names, and paid all bills from their joint accounts. At the trial herein the appellants introduced evidence, subject to a motion to strike, which was granted, to the effect the relationship between Alva and decedent was meretricious.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Their evidence, if believed, would have supported a finding that no marriage had actually taken place and that Alva's relationship was not that of a putative spouse. The trial court held that the appellants were estopped to deny the relationship because, knowing prior to the filing of the action against the wrongdoer that Alva intended to claim as the deceased's widow, they nevertheless joined in her complaint in the death action, made no objection to the prosecution of that suit in that form, and now seek to exclude her from sharing in the funds obtained through the death action, although their own damages were slight and the fund was mainly produced through the claim of Alva.

It appears that Alva first retained Changaris to press her claim in the death action and that the appellants thereafter, as children of decedent, not only acquiesced in her presence in the case as a party litigant but retained Changaris on their own behalf; and that he represented all parties in negotiating the settlement with the attorneys for the tortfeasor. During those negotiations counsel for the tortfeasor, learning that there was a question as to the right of Alva to claim either as the surviving wife of decedent or as a putative wife, filed a motion for leave to amend their pleadings to raise that issue. They informed Changaris they believed they could defeat the claim of Alva and that, since the damages which appellants could prove were minimal, Changaris ought to settle for something around a nuisance value. Changaris denied the validity of their claimed defense as to Alva and proceeded toward trial of the death action for all plaintiffs. His reply to defense counsel in that action was that he believed in Alva's right to recover and that the jury, at trial, would give an award far above his demands in negotiation merely because of the personal attack being made upon Alva. The upshot of all this was that counsel representing the tortfeasor in the death action agreed to compromise. There was paid to Changaris in settlement of all claims the sum of $45,000. After, and in accordance with the contract between Changaris and the plaintiffs in the death action, there had been deducted the costs and expenses advanced by him and his compensation, there remained the aforesaid sum in his hands.

By the judgment herein appealed from the trial court awarded to Alva the sum of $27,650.64 and distributed the remainder to appellants here.

We think that the trial court was correct in refusing to hear the attack on the status of Alva, not only upon the

ground of estoppel but upon another ground, namely, that her status as an heir with a right as surviving wife to share in the fund had to be taken as having been established in the compromise of the death action. In support of this last statement we quote the following from *Cross* v. *Pacific Gas & Electric Co.,* 60 Cal.2d 690, 692 [36 Cal.Rptr. 321, 388 P.2d 353]: "Although recovery under section 377 [Code Civ. Proc.] is in the form of a 'lump sum,' the amount is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss. (*Estate of Riccomi,* 185 Cal. 458, 461 [2] [197 P. 97, 14 A.L.R. 509].)

"Accordingly, each heir should be regarded as having a personal and separate cause of action.

" . . . . . . . . . .

"Section 377 of the Code of Civil Procedure by express words provides that 'The respective rights of the heirs in any award shall be determined by the court.' The quoted sentence clearly shows that the interests of the heirs are separate rather than joint. . . ."

We think that although a single action must be brought by all interested parties, nevertheless each member of the group bringing the action proves his own right to take as an heir, that is to say, his right to join in the action; and then proves his own damages as such heir. ■ The issues between each member of the group and the tortfeasor defendant are separate from the issues presented by the other members of the group insofar as their right to sue and the amount of their loss be concerned. ■ Although if the plaintiffs in a death action are successful, a judgment is rendered in a lump sum, that sum is arrived at simply by adding together the awards made to each of the claimants. As said in *Perkins* v. *Robertson,* 140 Cal.App.2d 536, at page 543 [295 P.2d 972]: " . . . But while a 'lump sum' verdict is required, the total recovery is the aggregate of the pecuniary loss of each of the heirs entitled to recover by reason of the death of the deceased—the damages of each are added to produce the total. [Citations.] And if an heir has not suffered pecuniary damage he cannot recover. . . ."

Section 377 provides, "The respective rights of the heirs in any award shall be determined by the court." This is a simple matter if the case is tried without a jury for in that case the court would have separately determined the right of each

claimant to recover, and the amount of recovery, and would distribute the total in accordance therewith. When the cause is tried to a jury, the jury is instructed to bring in a lump-sum verdict, although likewise instructed to separately determine the damages to which each party plaintiff is entitled and ascertain the lump sum by simply adding the separate awards so made. In such a case the court has the benefit of the evidence taken before the jury, uses that evidence in making distribution, but does not and can not retry the rights of recovery if those rights, by the evidence, were a jury question.

By analogy, when there has been no trial of the death action but the money is the result of a compromise worked out between the plaintiffs and the tortfeasor, the relation among the plaintiffs and the measurement of their several claims in the compromise fund are not changed, each being entitled to share in the fund in the proportion that his personal damage bears to the damage suffered by the others. Each party plaintiff has contributed by compromise to the lump sum produced and his contribution is to be evaluated just as would have been the case if the lump sum had been determined by a jury. In either case, whether the lump sum be ascertained by trial or by compromise, no plaintiff can have any proper reason for contesting the right of any other plaintiff. If a party be defeated in his right to share, that does not increase the right of any other to a larger award. The right of each party plaintiff to recover, as well as the amount rightfully to be recovered, is separate and apart from the like rights of all the others and is neither added to nor lessened by the success or failure of any other party in establishing a right to recover or in proving the amount to be awarded under such right.

In the interpleader action the trial court properly received evidence of the damage suffered by each of the parties whose rights had been compromised, and the evidence so taken supports the apportionment made. The court properly rejected evidence as to the right of Alva to recover from the wrong-doer for the appellants had no right to object to her claim as against the wrongdoer. Their interests were not affected one way or the other by that claim. It is clear from the evidence taken by the trial court in ascertaining distribution that the compromise sum was mainly produced by the compromise of Alva's rights. Whether or not the court's findings on estop-

pel were correct, the judgment appealed from must be affirmed for the reasons we have stated.

Turning now to the finding of estoppel, we think the court's finding thereon was correct and is amply supported by the testimony. It is clear from the record before us that whatever facts appellants relied upon in their attempted attack upon Alva's right to recover from the wrongdoer, their knowledge thereof was complete from a time before the death action was begun and throughout the negotiations that resulted in the settlement of that action; that throughout they acquiesced in the prosecution by Alva of her claim and knew before the compromise was effected that the defendant in the death action also knew there was a question as to Alva's rights. It is fairly inferable, and the inference was no doubt drawn by the trial court, that appellants were relying on the prosecution of Alva's claim to enhance the compromise. The order of distribution made by the court amounts to a finding based upon the evidence of damage in favor of each claimant to the fund, that the losses of appellants added but little to the fund. It would be most inequitable to permit appellants to make this belated attack upon the right of Alva for the purpose of obtaining for themselves money to which they have no claim whatever. A case, similar on its facts, the rationale of which we approve is *Howard* v. *Kelly*, 111 Miss. 285 [71 So. 391, Ann. Cas. 1918E 1230]. A widow suing in her own name, but also on behalf of three children of the deceased by his union with a former woman, recovered judgment for herself and three children against her deceased husband's railroad employer in a wrongful death action. Defendant railroad paid the amount of the judgment and costs to the sheriff, Kelly, who filed interpleader action when the widow claimed the entire fund, contending that the three children were illegitimate and therefore not entitled to recover damages because of the death of their alleged father. The children, though not named as plaintiffs in the damage action, were regarded by the court under the death statute as parties plaintiff even though not formally named. In holding the children entitled to share in the recovery, the court said at page 393:

". . . We think she has in her damage suit treated the children as coplaintiffs, and, this being so, the children, as coplaintiffs, should in equity be regarded as having title to an undivided interest in the proceeds. Their right to the fund is based upon their judgment against the railroad company,

and not the judgment alone recovered by Allena Howard. It was competent for the railroad company in that suit to challenge their interest or their right to recover anything. This the railroad company did not undertake to do. If the widow therefore in that action conceded the interests of the minors, and the railroad did not contest the legitimacy of the children, and the judgment was, in fact, enlarged on account of the decedent leaving children, then certainly the widow should not now be allowed to reverse positions and claim all the fruits of the previous litigation.''

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied January 15, 1965, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1965.