[No. H016088. Sixth Dist., Apr. 30, 1999.]

CITY OF MORGAN HILL, Plaintiff, v
ERNEST C. BROWN et al., Defendants, Cross-complainants and
Respondents;
MARGARET A. SELTZER, Defendant, Cross-defendant and Appellant.

## COUNSEL

Margaret A. Seltzer, in pro. per.; Whitehead, Porter & Gordon and Stephen L. Porter for Defendant, Cross-defendant and Appellant.

Clapp, Moroney, Bellagamba, Davis & Vucinich, Mark B. O'Connor, Merrilee C. Hague and Andrew R. Pollack for Defendants, Cross-complainants and Respondents.

## Opinion

ELIA, J.—The City of Morgan Hill (the City) filed a complaint in interpleader asking that Brown, Pistone, Hurley, & Van Vlear (the Firm) and Attorney Margaret A. Seltzer, a former shareholder in the Firm, litigate between themselves their entitlement to legal fees (Fees) owed by the City. (Code Civ. Proc., § 386.)[1] The City deposited the Fees in court and the trial court discharged it from the litigation. The Firm then moved for summary judgment. It argued that the Firm was entitled to the Fees pursuant to the contingent fee agreement between the Firm and City and that any compensation due Seltzer was governed by agreements between the Firm and Seltzer. The trial court granted the summary judgment motion and entered judgment for the Firm. For reasons we explain, we will affirm.

### Facts and Procedural Background

The Firm was incorporated in 1990 and had an office in Irvine, California.[2] In 1991, the City retained the Firm to represent it in two cases. In 1992, Seltzer joined the Firm as a shareholder. A San Francisco office was established and staffed by Seltzer. Seltzer was responsible for the City's cases.

In 1994, the City entered into an amended attorney-client fee agreement with the Firm in which City agreed to compensate the Firm for legal services based upon a percentage of the City's recovery. In 1995, the City approved a proposed settlement in the two cases. Pursuant to the terms of the amended attorney-client fee agreement, the City owed attorney's fees in the amount of $563,866.82.

Disputes arose between Seltzer and the Firm over allocation of the attorney's fees and other issues. As a result, the Firm bought out Seltzer's

[1] All further unspecified statutory references are to the Code of Civil Procedure.

[2] On February 13, 1990, the Firm filed its articles of incorporation. Until January 1, 1994, the Firm was named Ernest C. Brown, Law Corporation, and did business as Ernest Brown & Company. From January 1, 1994, until May 31, 1995, the Firm was named Brown, Pistone, Hurley, Van Vlear & Seltzer. After Seltzer was terminated from the Firm, the Firm amended its articles of incorporation to change its name to Brown, Pistone, Hurley & Van Vlear. (Corp. Code, § 900.) The Firm is currently known as Ernest Brown & Company. For ease of reference, we will refer to respondent as the Firm.

shareholder interest. On May 31, 1995, the Firm terminated its professional relationship with Seltzer. Seltzer started her own law practice, the Seltzer Law Group, and retained the City as a client.

Because of conflicting demands upon the City regarding disbursement of the attorney's fees, on May 26, 1995, the City filed a complaint in interpleader. The complaint named as defendants Ernest C. Brown, Thomas A. Pistone, Seltzer, and the Firm. The amount interpleaded was $562,266.62.[3] Seltzer collaborated with City's counsel in bringing the complaint in interpleader.

Seltzer answered the interpleader complaint and also filed a cross-complaint against the Firm and shareholders. Her third amended cross-complaint included claims for breach of contract, wrongful discharge of employment, defamation, and other causes of action. The Firm answered the interpleader complaint and also cross-complained against Seltzer, asserting claims arising out of Seltzer's tenure at the Firm.

In August 1995, Seltzer and the City together filed a motion for interlocutory order of discharge, attorney's fees, and related relief. On September 7, 1995, the matter was heard by Judge Conrad Rushing. Neither the Firm nor Seltzer objected to discharging the City and allowing the Fees to be deposited into court.

On January 8, 1996, Judge Rushing granted the motion. Among other things, the court ordered that the City was discharged from the case and that the Fees be deposited into court.[4]

In the interim, in October 1995, the Firm moved for summary judgment/adjudication in the interpleader action. In support of its motion, the Firm included the following undisputed facts.

The Firm is a corporation, incorporated by articles of incorporation filed in 1990. Between 1994 and May 31, 1995, the Firm was named Brown, Pistone, Hurley, Van Vlear & Seltzer. Effective April 1, 1994, the Firm entered into an amended attorney-client fee agreement with the City. The fee agreement provided that attorney fees due under the agreement were to be paid to the "ATTORNEYS" defined as "Brown, Pistone, Hurley, Van Vlear &

---

[3]The Fees represent $563,866.82 less the costs of the escrow.

[4]Judge Rushing also determined that the Firm was restrained from disclosing confidential information regarding the City's settlement, and Seltzer was awarded attorney's fees incurred in bringing the motion. The Firm appealed the attorney's fee award and "gag order" (*City of Morgan Hill* v. *Brown* (Dec. 19, 1996) H015130 [nonpub. opn.]). We concluded that the provisions complained of should be stricken from the order.

Seltzer, a professional law corporation, previously known as Ernest Brown & Company."

Seltzer entered into a shareholder agreement with the Firm. Under the shareholder agreement, a compensation committee determines the shareholder's compensation, including salaries and shareholder bonuses. Unless the compensation committee determines otherwise, bonuses are allocated based upon factors such as the shareholder's realized personal billings and whether the attorney was the originating attorney for the client.

The shareholders agreement also provides for repurchase of shares following the termination of a shareholder's employment. Once a shareholder is terminated, the shareholder "shall have no interest in goodwill, leases, accounts receivable, unallocated profits or other assets of the company." The shareholder agreement also provides, "All the Shareholders acknowledge and agree that the provisions set forth herein with respect to the repurchase of shares of the Stock upon the occurrence of certain events shall be exclusive and shall be in lieu of any other statutory procedures relating to the dissolution of the Company or other disposition of the Shares of the stock."

The Firm terminated Seltzer as a shareholder effective May 31, 1995.

In opposition to the summary judgment motion, Seltzer included her own declarations. Among other things, she stated, "I never made any claim [for the attorney's fees] to City, but instead after Brown and Pistone tried to interfere with my collection of the fee on behalf of BPHVS, I informed the City Attorney that I had an interest in the fee under our internal agreements." Her declaration also states, "I at all times attempted to collect the fee as an agent of BPHVS. Brown and Pistone instructed the City not to permit me to collect the fee as agent for BPHVS." Seltzer states, "My interest in the fee is based on contractual and other promises that profits will be distributed to partners of BPHVS based on certain percentages of the profits they generate for the firm from their practices."

On April 5, 1996, the trial court granted the summary judgment motion. The court found that the Fees were "owned" by the Firm and that Seltzer had no ownership interest in the Fees. Among other things, the trial court explained that "While Ms. Seltzer may have a claim for additional compensation or bonuses under partnership/shareholder agreements, it does not appear that she has an ownership interest or lien interest with respect to the particular contingent fee or specific 'fund' herein which belong[s] solely to [the Firm]." The trial court determined that the law firm "shall recover the interplead [sic] funds and all interest thereon."

On April 16, 1996, Judge Fogel issued the order releasing the Fees to the Firm. Seltzer then filed a motion to revoke interim ruling and to reconsider and deny the summary judgment motion. On April 19, 1996, Judge Fogel issued an order staying release of the Fees until after Judge Turrone ruled on Seltzer's motion for reconsideration. On June 12, 1996, Seltzer's motion for reconsideration was denied.

Seltzer then petitioned for a writ of mandate and prohibition seeking an order vacating the summary judgment order. We summarily denied the petition.

On August 20, 1996, a judgment was entered on the interpleader action, finding that the Firm was the owner of the Fees.

This appeal ensued.[5]

*Standard of Review*

Summary judgment is granted when there are no triable issues as to any material facts and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) When reviewing a trial court's decision to grant summary judgment, we must identify the issues framed by the pleadings, and determine whether the moving party has established facts which negate the opposing party's facts and justify a judgment in the moving party's favor. When the moving party's facts prima facie justify a judgment, we determine whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252-1253 [32 Cal.Rptr.2d 223, 876 P.2d 1022].)

*Discussion*

Seltzer argues that the trial court erred in granting summary judgment. After reviewing the principles relating to the law of interpleader, we will conclude that the judgment should be affirmed.

---

[5]After oral argument, Seltzer requested that we dismiss the appeal on the grounds that the parties had settled their dispute. After the record on appeal is filed, dismissal of the action based on abandonment or stipulation of the parties is discretionary, rather than mandatory. (Cal. Rules of Court, rule 19(b); *Lundquist* v. *Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279].) "We have inherent power to retain a matter, even though it has been settled and is technically moot, where the issues are important and of continuing interest." (*Burch* v. *George* (1994) 7 Cal.4th 246, 253, fn. 4 [27 Cal.Rptr.2d 165, 866 P.2d 92].) The issues in the present case satisfy these criteria and therefore we follow established precedent in retaining jurisdiction to resolve the legal issue presented in this case.

## A. *Interpleader Law*

■ When a person may be subject to conflicting claims for money or property, the person may bring an interpleader action to compel the claimants to litigate their claims among themselves. (Code Civ. Proc., § 386, subd. (b).)[6] Once the person admits liability and deposits the money with the court, he or she is discharged from liability and freed from the obligation of participating in the litigation between the claimants. (*Williams* v. *Gilmore* (1942) 51 Cal.App.2d 684, 689 [125 P.2d 539]; *Hancock Oil Co.* v. *Hopkins* (1944) 24 Cal.2d 497 [150 P.2d 463].) The purpose of interpleader is to prevent a multiplicity of suits and double vexation. (*Hancock Oil Co.* v. *Hopkins*, *supra*, 24 Cal.2d at p. 508.) "The right to the remedy by interpleader is founded, however, not on the consideration that a [person] may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability." (*Pfister* v. *Wade* (1880) 56 Cal. 43, 47.)

■ In the past, interpleader was available only if four requirements were met. These were (1) all claimants must have identical claims to the same thing, debt, or duty; (2) all adverse titles or claims must be dependent on or derived from a common source; (3) the person seeking the remedy must neither have an interest or claim in the subject matter; and (4) the person seeking the remedy must be an indifferent stakeholder and have no independent liability to any of the claimants. (*Hancock Oil Co.* v. *Hopkins*, *supra*, 24 Cal.2d at p. 508; 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 216, p. 281.)

Under current law, the scope of interpleader " ' "has been broadened and enlarged." ' " (*Hancock Oil Co.* v. *Hopkins*, *supra*, 24 Cal.2d at p. 508;

---

[6]Section 386, subdivision (b) provides, in pertinent part, that: "Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims. [¶] When the person, firm, corporation, association or other entity against whom such claims are made, or may be made, is a defendant in an action brought upon one or more of such claims, it may either file a verified cross-complaint in interpleader, admitting that it has no interest in the money or property claimed, or in only a portion thereof, and alleging that all or such portion is demanded by parties to such action, and apply to the court upon notice to such parties for an order to deliver such money or property or such portion thereof to such person as the court shall direct; or may bring a separate action against the claimants to compel them to interplead and litigate their several claims. The action of interpleader may be maintained although the claims have not a common origin, are not identical but are adverse to and independent of one another, or the claims are unliquidated and no liability on the part of the party bringing the action or filing the cross-complaint has arisen. The applicant or interpleading party may deny liability in whole or in part to any or all of the claimants. The applicant or interpleading party may join as a defendant in such action any other party against whom claims are made by one or more of the claimants or such other party may interplead by cross-complaint; provided, however, that such claims arise out of the same transaction or occurrence. . . . ."

*Williams* v. *Gilmore, supra,* 51 Cal.App.2d at p. 688.) Privity between the claimants is no longer required. Further, interpleader may be permitted even though one claimant seeks part of the fund and the other claimant seeks the entire fund amount. (Code Civ. Proc., § 386; *Hancock Oil Co.* v. *Hopkins, supra,* 24 Cal.2d at p. 508.) Partial interpleader, where the obligor admits some liability but makes a partial claim or asserts a partial interest, is also allowed. (Code Civ. Proc., § 386.) Finally, it has been stated that the "remaining restriction against independent liability is construed so that it is rarely an obstacle to the remedy." (4 Witkin, Cal. Procedure, *supra,* Pleading, § 219, pp. 283-284; see also *Pacific Loan Management Corp.* v. *Superior Court* (1987) 196 Cal.App.3d 1485, 1490 [242 Cal.Rptr. 547].)

Although section 386 has broadened the scope of the interpleader remedy, it is still required that the claimants seek the same thing, debt, or duty. For example, in *Hancock Oil Co.* v. *Hopkins, supra,* 24 Cal.2d at page 508, a suit was brought by a lessee when rent and royalties were demanded by different claimants. In *Conner* v. *Bank of Bakersfield* (1920) 183 Cal. 199 [190 P. 801], suit was brought by a bank against rival claimants to a bank deposit. *Mutual Life Ins. Co.* v. *Henes* (1935) 8 Cal.App.2d 306 [47 P.2d 513] involved an insurer's suit against claimants to the proceeds of an insurance policy. These cases all involved claims relating to the same thing, debt, or duty held by the stakeholder. If the claims do not relate to the same thing, debt, or duty, then interpleader is improper. (*Van Orden* v. *Anderson* (1932) 122 Cal.App. 132, 142 [9 P.2d 572].) As the California Supreme Court explained, ". . . the very rationale of interpleader compels the conclusion that [section 386] does not allow the remedy where each of the claimants asserts the right to a different debt, claim or duty." (*Hancock Oil Co.* v. *Hopkins, supra,* 24 Cal.2d at p. 504.)

B. *Analysis*

In this case, Seltzer and the Firm assert the right to different things, debts or duties owed from different obligors. The debt claimed by the Firm is the Fees; the obligor is the City. The debt claimed by Seltzer is compensation under the Firm's internal agreements; the obligor is the Firm. The fact that the amount of money due Seltzer under the shareholder's agreement and other agreements with the Firm may be partly based upon the amount of the Fees from the City does not alter the fact that the debt owed Seltzer is due from the Firm under her agreements with the Firm. Indeed, Seltzer admits that she is owed money pursuant to the Firm's internal agreements, concedes trying to collect the Fees from the City only as an agent of the Firm and does not dispute that the Firm's internal agreements must be used to calculate the specific sum owed. Given that Seltzer concedes that the City *does not owe*

*the Fees to her*, Seltzer is unable to demonstrate that Seltzer and Firm assert the right to the same thing, debt, or duty owed by City.

Cases cited by Seltzer only highlight the differences between this case and cases where interpleader is permitted. (See, e.g. *Changaris* v. *Marvel* (1964) 231 Cal.App.2d 308 [41 Cal.Rptr. 774]; *Simas* v. *Conselho Supremo* (1920) 184 Cal. 511 [194 P. 1001]; *Sullivan* v. *Lusk* (1907) 7 Cal.App. 186; *Leroy* v. *Bella Vista Inv. Co.* (1963) 222 Cal.App.2d 369 [35 Cal.Rptr. 128].) For example, in *Changaris* v. *Marvel, supra*, 231 Cal.App.2d 308, an attorney representing five plaintiffs obtained a settlement in their wrongful death lawsuit. The plaintiffs disagreed on how the settlement should be divided. After deducting attorney's fees and costs, the attorney interpleaded the settlement balance and was discharged from further responsibility. Thus, unlike the present situation, in *Changaris*, all claimants asserted a right to the same debt owed by the same obligor—the defendant. (*Id.* at p. 309.)

Seltzer also cites *Simas* v. *Conselho Supremo, supra*, 184 Cal. 511. In *Simas*, a father and brother agreed to insure their lives in each other's favor. The father, in violation of the agreement, named the plaintiff as the beneficiary. When the father died, the insurer did not know whether to pay the brother or the plaintiff. Under these circumstances, the court decided the insurer could compel the claimants to litigate the matter between themselves. (*Id.* at p. 511.) *Simas* is distinguishable because both the plaintiff and the brother claimed the insurer had a duty to pay the benefits to them. By contrast, Seltzer does not assert that the City has a duty to pay the Fees to her. Seltzer asserts that Firm has a duty to pay her a portion of the Fees Firm receives from the City.

*Sullivan* v. *Lusk, supra*, 7 Cal.App. 186 is also distinguishable. In *Sullivan*, a trustee was allowed $2,595 to pay attorneys (who were not members of the same firm) employed by him on behalf of the trust. The trustee interpleaded the two attorneys, alleging that one claimed the whole sum and the other claimed half. Unlike this case, both *Sullivan* attorneys had a possible ownership interest in the money held by the trustee.

Seltzer argues that the trial court's ruling effectively reinstated the privity requirement long since abandoned by California courts. Seltzer is correct about the demise of that rule. However, she is incorrect in asserting that it was applied here. Requiring that "all of the adverse titles or claims must be dependent, or be derived from a common source" (*Hancock Oil Co.* v. *Hopkins, supra*, 24 Cal.2d at p. 503), is not the same as requiring that the claimants assert a right to payment for the same thing, debt or duty from the same obligor. For example, in *Hancock*, a lessee was permitted to interplead

a lessor and a stranger to the lease where both claimed the lease royalties and rent. In so permitting, the California Supreme Court established that claimants need not be in privity with each other. Relying upon *Hancock*, Seltzer argues that interpleader is proper here because she was a stranger to the contingency fee agreement. But obviously *Hancock* did not permit interpleader simply because one of the claimants was a stranger to the lease. In *Hancock*, the stranger to the lease, a copartnership, claimed it was entitled to the rents and royalties because it owned the real property described in the lease and because the lessor held the property in trust for the copartnership. Thus, the copartnership had a basis for asserting that it had a right to receive the royalties and rents from the lessee. By contrast, Seltzer has no basis for asserting that she has the right to receive the Fees from the City. Had Seltzer alleged that Firm assigned the Fees to her, or had Seltzer alleged that the City had also agreed, in contradiction of the City's agreement with Firm, to pay Seltzer the Fees, then the situation might be different. In both those circumstances, both Firm and Seltzer would be seeking the same thing, debt or duty from the same obligor.

In this case, all Seltzer has is a right against the Firm for compensation pursuant to her internal agreements with the Firm. The City owed nothing to Seltzer. Under its contingency fee agreement with Firm, City owed the Fees to the Firm. Had Seltzer remained with the Firm, the Fees would have been paid to Firm, and Firm would have paid Seltzer. Just because Seltzer's relationship with the Firm has been severed does not give Seltzer the right to ignore her agreement with Firm and seek payment directly from the City.

There are important policy reasons for our result. First, allowing interpleader in these circumstances would constitute a form of prejudgment attachment without the protections generally afforded those subject to that provisional remedy. (See, e.g., Alexander, *Claims in Interpleader, Abuse and Remedy* (1969) 44 State Bar J. 210, 211.) When a law corporation discharges an attorney, and the attorney sues for unpaid bonuses, the attorney could simply sue one of the firm's clients for whom the attorney did work, and assert a right to the fee. Using the remedy of interpleader, the attorney could keep the fee tied up in court pending adjudication of the attorney's lawsuit against the firm. This would give the attorney an unfair negotiating advantage, and also give attorneys an unfair advantage as compared to other wrongful termination plaintiffs who are unable to sue a company's customers claiming the fund of the receivables due the employer.

Second, the purpose of interpleader is to prevent a multiplicity of suits and double vexation. (*Hancock Oil Co.* v. *Hopkins, supra*, 24 Cal.2d at p. 508; *Pfister* v. *Wade, supra*, 56 Cal. at p. 51.) In this case, the City was not faced

with a valid threat of double vexation. Under its agreement with Firm, the City owes the Fees to Firm. The City had no agreement with Seltzer, Firm did not assign the Fees to Seltzer, nor was there any basis for Seltzer to assert a claim or lien rights to the Fees. During her lawsuit against Firm, Seltzer may well prove that her work on the City's account entitles her to some payment from Firm but she cannot prove that she was the individual authorized to receive the Fees from the City.

Third, the unusual circumstances here suggest that the interpleader remedy was not being used solely as a means to protect the stakeholder. Even though Seltzer had no right to receive the Fees from the City and the City faced no valid threat of double vexation, the City's decision to file the interpleader complaint likely stemmed from its continuing relationship with Seltzer. When Seltzer's relationship with the Firm ended, Seltzer retained the City as her client, and assisted the City in filing its complaint in interpleader and bringing the motion for interlocutory relief. Concerns about a claimant using interpleader as a substitute for prejudgment attachment certainly seem justified in a situation such as this, where one of the claimants, as the stakeholder's attorney, assists the stakeholder in obtaining the interpleader remedy against that claimant's former law firm. In such circumstances, "[i]interpleader . . . is used not as a protection for the stakeholder, but to keep money from the party legally entitled to the fund. It is, in effect, an attachment." (Alexander, *Claims in Interpleader, Abuse and Remedy*, *supra*, 44 State Bar J. at p. 213.) Such a result does violence to the concept of interpleader as an equitable proceeding. (See, e.g., *Williams* v. *Gilmore*, *supra*, 51 Cal.App.2d at p. 689.)

In short, the undisputed facts show that Seltzer has no right to collect the Fees from the City nor is she given any lien rights in those Fees. Her claim is based upon a right to sue the Firm for wrongful termination and payment of compensation. In the process of that claim, she may show that her work on the City's account entitles her to payment from the Firm but she cannot show she was entitled to receive the Fees from the City. Interpleader speaks of conflicting claims against the same obligor over the same fund; not on the possible eventual right to a judgment that might be satisfied out of that fund.

## C. *Trial Court Rulings*

Having so concluded, we next consider Seltzer's argument that Judge Turrone's finding that Firm "owned" the Fees conflicts with Judge Rushing's ruling discharging the City and allowing deposit of the Fees into court. As explained below, there was no error.

When a person brings an interpleader action, a two-step procedure is generally followed. First, it is determined whether the plaintiff may bring the

suit and force the claimants to interplead. Second, if it is so determined, then the court will discharge the plaintiff from liability and "the action may proceed for the determination of the rights of the various claimants to the property which is then in the custody of the court." (*Weingetz* v. *Cheverton* (1951) 102 Cal.App.2d 67, 80 [226 P.2d 742].)

Although the interpleader procedure typically involves two steps, there is no basis for Seltzer's suggestion that completion of stage one— discharge of the stakeholder and deposit of the fees in court—prevents summary disposition at stage two. In this case, Judge Rushing could have ruled in the first instance that interpleader was inappropriate and refused the City's request to be discharged. But the fact that he did not does not mean Judge Turrone erred. By granting summary judgment, Judge Turrone did not interfere with Judge Rushing's finding because Judge Rushing did not decide how the parties' claims should be adjusted nor did he rule that the Fees were to remain deposited in court until the litigation between the Firm and Seltzer was complete. Judge Rushing only determined that stage one of the interpleader, resulting in discharge of the City and deposit of the fees in court, was proper. Moreover, Judge Rushing's decision to discharge the City and allow the Fees to be deposited into court was justified since neither Seltzer nor the Firm disputed the City's right to be discharged. Since neither party objected, discharging the City and allowing the money to be deposited into court was not erroneous. (*Lincoln Nat. Life Ins. Co.* v. *Mitchell* (1974) 41 Cal.App.3d 16, 18 [115 Cal.Rptr. 723].)

Seltzer complains that the trial court did not consider the parties' cross-complaints in its summary judgment ruling. Seltzer's argument is really a variation of her claim that the trial court was required to resolve all of the parties' disputes before granting summary judgment. She emphasizes that once the stakeholder is discharged and the money deposited into court, all that is left for the court to resolve is the parties' dispute. She contends that during this second stage, the issues are framed by the parties' cross-complaints against each other, and that the cross-complaints here raised disputed facts regarding Seltzer's claims to compensation pursuant to the Firm's internal agreements.

We conclude that there was nothing improper in the procedure followed. As already noted, neither Seltzer nor the Firm objected to permitting the City to deposit the money with the court and then be discharged. When Firm then sought summary judgment as to the ownership of the Fees, there is no reason why the trial court should have been prohibited from ruling that the City "owned" the Fees given the undisputed facts. The two-step inter-pleader procedure is predicated upon the notion that "the action may proceed

for the determination of the rights of the various claimants *to the property which is then in the custody of the court.*" (*Weingetz* v. *Cheverton, supra,* 102 Cal.App.2d 67, 80, italics added.) Because the undisputed facts demonstrated that Firm had the right to that property, summary judgment was proper. The fact that the parties have other claims against each other is not a persuasive reason for denying summary judgment *as to ownership of the fund* given that the undisputed facts show that only one of the parties is entitled to that ownership. Interpleader confers rights only concerning discharge of the stakeholder and then leaves the conflicting claims to the fund for proper later resolution. If it turns out, as here, that a claimant has no viable claim *to the fund,* then distribution of the fund to the remaining claimant is entirely appropriate.

 In addition, the matter is appealable despite the fact that the cross-complaints remain to be litigated. The one final judgment rule seeks to avoid oppressive and costly piecemeal disposition and multiple appeals in a single action by requiring that review of intermediate rulings await final disposition of the case. (9 Witkin, Cal. Procedure, *supra,* Appeal, § 58, p. 113.) "A purported final judgment rendered on a complaint without adjudication of the issues raised by the cross-complaint is not appealable absent some exception to the rule." (*American Nat. Bank* v. *Stanfill* (1988) 205 Cal.App.3d 1089, 1095 [252 Cal.Rptr. 861].) However, there is an exception to the one final judgment rule when there is a final determination of some collateral matter distinct and severable from the general subject of the litigation. If this determination requires the aggrieved party immediately to pay money or perform some other act, then that party is entitled to appeal even though litigation of the main issues continues. "The determination is substantially the same as a final judgment in an independent proceeding." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 60, p. 116.) This exception applies here. Summary judgment as to the ownership of the Fees constituted a final determination as to the *complaint in interpleader* and is appealable since it directs the payment of the Fees to the Firm.[7]

Finally, Seltzer says the status of the entity to whom the Fees are owed is disputed and therefore summary judgment was improper. The undisputed facts refute this contention. Seltzer presented no evidence to dispute the fact that the Firm was incorporated in 1990, and underwent name changes pursuant to Corporations Code section 900. Indeed, in her separate statement in response to the Firm's summary judgment motion, Seltzer asserts the fact the Firm changed its name from Brown, Pistone, Hurley, Van Vlear &

---

[7]Seltzer also claims the trial court did not comply with the requirements of section 437c. Our review of the record discloses that these arguments are without merit.

Seltzer to Brown, Pistone, Hurley, & Van Vlear is not a material issue of fact and irrelevant to the disposition of the interpleader claim. Seltzer also cites *Jewel* v. *Boxer* (1984) 156 Cal.App.3d 171 [203 Cal.Rptr. 13] and *Fox* v. *Abrams* (1985) 163 Cal.App.3d 610 [210 Cal.Rptr. 260]. Although those cases may assist Seltzer in her claim for compensation from the Firm, they do not involve interpleader or demonstrate that under the circumstances here a terminated attorney has an ownership interest or lien upon fees owing from the client to the corporation.

### Disposition

The judgment is affirmed.

Cottle, P. J., and Premo, J., concurred.

A petition for a rehearing was denied May 26, 1999, and appellant's petition for review by the Supreme Court was denied July 21, 1999.