Filed 10/28/13  American Equity Ins. Co. v. Browne George Ross, LLP CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMERICAN EQUITY INSURANCE COMPANY,<br><br>        Defendant and Appellant,<br><br>        v.<br><br>BROWNE GEORGE ROSS, LLP,<br><br>        Defendant and Respondent. | B243367<br><br>(Los Angeles County<br>Super. Ct. No. BC464551) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Barbara M. Scheper, Judge.  Reversed and remanded.

Adler Law Group and Erwin E. Adler for Defendant and Appellant.

Browne George Ross, Eric M. George, Benjamin D. Scheibe and Ira Bibbero for

Defendant and Respondent.

Sargon Enterprises, Inc. (Sargon), was involved in a lengthy and complex litigation with the University of Southern California (USC). In particular, both parties in the action alleged the other had breached a contract. American Equity Insurance Company (AEIC) had insured Sargon, and, pursuant to its policy, provided Sargon with a defense in USC's action against it, by paying the fees incurred by Sargon's defense counsel. AEIC did not pay Sargon's counsel to the extent it sought affirmative relief for Sargon against USC. Ultimately, Sargon prevailed on the contract issues in both its action against USC and USC's action against it, resulting in a substantial award of prevailing party attorney's fees. After further continued litigation (which AEIC did not fund) Sargon was awarded a total of $4,000,000 in attorney fees. As there were potential claims against this amount by Sargon, AEIC, Sargon's prior counsel, and Sargon's present counsel, USC interpleaded the $4,000,000. Thereafter, Sargon's present counsel obtained judgment on the pleadings against AEIC in the instant interpleader action, on the basis that AEIC did not and could not assert a cognizable claim to the specific interpleaded funds. We conclude that the doctrine of equitable subrogation provides AEIC with a claim to a portion of the interpleaded funds, and therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      *Underlying Facts[1]*

Sargon invented a form of dental implant and entered into a clinical trial agreement with USC.  Thereafter, Sargon sued USC for breaching the clinical trial agreement; USC filed a cross-complaint against Sargon, also alleging breach of contract.  The cross-actions between USC and Sargon asserted additional causes of action which were not based on contract.  Additionally, there was a related lawsuit brought against Sargon by Dr. Hessam Nowzari, a member of the USC faculty.[2]

AEIC was Sargon's insurer.  Sargon tendered the USC action to AEIC for a defense, which AEIC provided, paying Sargon's defense counsel.  Sargon had a series of counsel representing it in the USC action.  Initially, Sargon was represented by Attorney Deborah F. Sirias at the Heenan Blaikie firm, in both its prosecution of the action against USC and its defense of the USC cross-complaint.  During this time, the firm separated its billings for the prosecution of Sargon's action against USC from its billings for the defense of USC's action against Sargon.  At some point, Sargon substituted in Attorney Jay Bloom as counsel in the prosecution of its action against USC, but Attorney Sirias continued to defend USC's action against Sargon.  Thereafter,

---

[1]      The appeal is taken from judgment on the pleadings, although, by the time of the hearing on the motion, AEIC had abandoned the theories of relief pursued in its original answer to the interpleader complaint and had instead sought leave to amend to pursue a different theory, and represented to the court that it could plead the necessary facts. Our discussion of the facts is based on the facts as AEIC asserts them; whether those facts are actually true will be a matter for the trial court to determine on remand.

[2]      The Nowzari action is not at issue in this appeal.  It is mentioned only for its relationship to a theory of relief AEIC no longer pursues.

Attorney Sirias moved her practice to Lewis Brisbois Bisgaard & Smith (Lewis Brisbois), which took on the defense of Sargon. Eventually, Lewis Brisbois was substituted in for Attorney Bloom in the prosecution of Sargon's action against USC.[3] AEIC paid the defense-related billings of both Heenan Blaikie and Lewis Brisbois until such time as USC no longer pursued causes of action potentially covered by AEIC's policy.[4]

In March 2003, Sargon obtained a verdict in its favor on its breach of contract claim against USC and USC's breach of contract claim against it. As the prevailing party on the contract,[5] Sargon was entitled to its attorney fees. In July 2005, Sargon moved for its attorney fees in the amount of $1,840,520. These included fees billed by Heenan Blaikie, Attorney Bloom, and Lewis Brisbois – for both prosecuting Sargon's claim against USC and defending USC's claim against Sargon. In May 2006, the trial court awarded Sargon its "reasonable attorneys' fees" in the amount of $1,801,495.[6]

---

[3]     At one point, the appellate firm of Greines, Martin, Stein & Richland represented Sargon in appellate proceedings. That firm was named in the interpleader action, but disclaimed any interest in the interpleaded funds.

[4]     Attorney Sirias submitted a declaration stating that defense fees incurred by Sargon at the Heenan Blaikie and Lewis Brisbois firms amounted to $857,313.00. AEIC represents that it paid $864,640.54 in defense fees. There is no explanation of the discrepancy.

[5]     Originally, the trial court concluded USC was the prevailing party on the contract; we reversed that determination on appeal.

[6]     There is no indication in the record as to the reason Sargon was awarded $39,025 less than it sought.

The litigation between Sargon and USC was far from over, however. In October 2006, the trial court ordered that execution on its May 2006 fee order be held in abeyance until the final resolution of the case.[7] In April 2007, the firm of Browne, Woods & George, which is now Browne George Ross LLP (BGR), substituted in as counsel for Sargon. While litigation continued long after the initial fee award, AEIC was not involved in funding it; USC had dismissed all of its causes of action against Sargon which were potentially covered under AEIC's policy, so AEIC had no further duty to defend Sargon.

A judgment was ultimately entered in the litigation between Sargon and USC in August 2007. Further appellate litigation followed. By June 2011, the attorney fee award against USC, in favor of Sargon, had increased to $4,000,000, and was nearly $5,000,000 with interest included.

2.    *USC Files the Instant Interpleader*

USC believed that there were competing claims to the attorney fee award, and, on June 30, 2011, interpleaded the full amount, including interest.[8] By its first amended complaint, USC identified as claimants Sargon, BGR, Attorney Bloom, Lewis Brisbois, and AEIC.

---

[7]    The trial court noted in its order that, "although the fee award here is subject to change, it is subject to change in only one direction; an increase in [Sargon]'s favor."

[8]    USC offset a $440,000 judgment against Sargon.

3. *The Answers*[9]

A defendant named in an interpleader complaint may file an answer "which shall contain allegations of fact as to his ownership of or other interest in the amount or property and any affirmative defenses and the relief requested." (Code Civ. Proc., § 386, subd. (d).)  BGR answered the complaint, arguing that USC was not entitled to interpleader.  To the extent BGR sought affirmative relief, it requested "[t]hat the interpleaded sum immediately be paid to BGR, in order to discharge in part BGR's entitlement to fees of $5,550,201.80 and costs of $84,520.47, plus interest thereon."

AEIC also answered the complaint and sought affirmative relief.  AEIC no longer pursues either basis of relief it sought in its answer.[10]  AEIC first argued that, of the $864,640.54 which it paid Sargon's attorneys, only a portion of the amount was attributable to the defense of potentially covered claims.[11]  AEIC sought reimbursement of all of the attorney fees it had paid which compensated counsel for anything but the defense of potentially covered claims.  Second, AEIC stated that it had paid $448,572.21 to defend Sargon against the separate lawsuit by Nowzari.  AEIC alleged that Sargon settled its claim with Nowzari, defeating AEIC's subrogation right to

---

[9]     The record on appeal does not include the responsive pleadings filed by Sargon, Attorney Bloom, or Lewis Brisbois.

[10]     We discuss AEIC's pleading only because AEIC's pursuit of these theories is responsible, in part, for the apparent confusion which followed.

[11]     The rest was allegedly spent on defending claims that were not potentially covered and on prosecuting Sargon's claims for affirmative relief against USC.

6

reimbursement of those fees.  AEIC sought reimbursement of the attorney fees it had paid in the Nowzari action from the interpleaded funds.

### 4.  *BGR's Motion for Judgment on the Pleadings*

BGR then moved for judgment on the pleadings with respect to AEIC's claims for part of the interpleaded funds.[12]  BGR argued that AEIC had "no lien on, or ownership interest in, the specific monies deposited by USC." (Underlining original.) BGR argued that, with respect to AEIC's claim to be repaid attorney fees for non-potentially-covered claims, AEIC did not allege that it had a subrogation claim to the funds, but simply sought to collect funds to which it might be entitled from Sargon under the terms of its insurance policy.  Similarly, BGR argued, with respect to AEIC's claim for a refund of the Nowzari attorney fees, that AEIC's possible right to recover from Sargon the attorney fees it had paid to defend the Nowzari action gave AEIC no claim on the specific fund of attorney's fees paid in the USC action.

### 5.  *AEIC Opposes the Motion*

In opposition to the motion for judgment on the pleadings, AEIC changed its arguments.[13]  Instead of arguing that it was entitled to an allocation of its defense fees

---

[12]    It is unclear whether a motion for judgment on the pleadings is an appropriate motion to be filed by one interpleader claimant against another.  Assuming, without deciding, that it is, there is nothing in the record indicating that the *other* interpleader claimants ever joined in BGR's motion.  For this reason alone, the trial court erred in entering judgment against AEIC on the basis of this motion; AEIC's claim for relief was never challenged by Lewis Brisbois, Sargon, or Attorney Bloom.

[13]    AEIC continued, however, to argue that it was entitled to recover the fees it had paid to defend the Nowzari action out of the interpleaded funds, a position which it now concedes is untenable.

7

between potentially covered and uncovered causes of action (and a refund from Sargon for the fees paid for the latter), AEIC now argued it had a right to recover the *entirety* of the fees it had advanced for the defense of the USC action because of the express right of subrogation set forth in its insurance policy.[14]

6. *BGR's Reply*

In reply, BGR first argued that AEIC could not defeat a motion for judgment on the pleadings by pursuing a theory not alleged in its pleading. As to the merits of AEIC's subrogation claim, BGR did not dispute that AEIC might have a subrogation claim against Sargon, but argued that such a claim did not give rise to a lien on the interpleaded funds. BGR also raised the "made whole" rule, which provides that, under certain circumstances we shall discuss later, an insured is entitled to be made whole before its insurer can obtain proceeds the insured collected from a responsible third party. Finally, BGR strongly implied that any right AEIC might have to the funds

---

[14] AEIC also pursued a theory of constructive trust, which it pursues on appeal. We do not address constructive trust, as we conclude equitable subrogation is sufficient to justify AEIC's claim against the interpleaded funds. In any event, we believe the assertion of constructive trust was, at best, premature. AEIC argued that it had a constructive trust over the funds in Sargon's or BGR's hands, but the interpleaded funds were not in their hands – the funds had been deposited into court. To the extent AEIC argued that the mere *claims* of Sargon and BGR to the interpleaded funds constituted an improper interference with AEIC's rights sufficient to justify the imposition of a constructive trust, we disagree. Interpleader is the proper forum to adjudicate competing claims to a fund; the mere *assertion of a litigant's claim* to the funds does not constitute an *improper detention* of the funds which may ultimately be allocated to another claimant.

8

would be subordinate to BGR's rights as it was BGR which obtained the award which resulted in the interpleaded funds.[15]

7.      *Supplemental Opposition*

In response to BGR's reply, AEIC filed a supplemental points and authorities, for which it had not sought permission from the trial court.  AEIC argued against the application of the "made whole" rule.  It also argued that its subrogation rights vested by operation of law when it paid Sargon's attorney fees, long before BGR ever entered the case.

BGR then moved to strike this unauthorized points and authorities.  BGR again stated, this time explicitly, that it was responsible for the recovery of the fees, while AEIC did nothing.[16]  This assertion is demonstrably false.[17]  AEIC's claim is based on

---

[15]      BGR did not actually *state* this fact.  It simply argued that a particular case was fatal to AEIC's argument for many reasons.  BGR argued, "The Court also found that, even were the insurers to have some kind of equitable claim, that claim nevertheless would be subordinate to the claim of the attorney that secured the settlement proceeds. *Farmers Ins. Exch*[*ange v. Smith* (1999)] 71 Cal.App.4th [660,] 672 ('in any event, it is clear that the attorney's claim should have priority over the insurer's, because it is the attorney's work that results in the recovery from the tortfeasor in the first place'). *Farmers Ins. Exch.* therefore is fatal to AEIC's attempt to assert this unpleaded constructive trust claim on multiple levels." (Underlining original.)  It is clear that BGR is implying that it was the attorney whose work resulted in the recovery from USC. There would be no reason to quote this language if BGR were not arguing that it applied.

[16]      BGR argued, "Having elected not to participate in the efforts that secured the recovery from USC [and] to let BGR do the work, any claim AEIC may have on that recovery should be deemed subject to the 'made whole' rule and subordinate to BGR's lien."

[17]      That the statement is false is not the only problem with BGR's statement quoted in footnote 16, *ante*.  BGR argued that AEIC's lien should be deemed "subordinate to

9

the attorney fees which were awarded in May 2006, which apparently included the attorney fees AEIC paid to defend the USC action. BGR was not substituted in the case until the following year; the May 2006 fee award itself was obtained by Lewis Brisbois, whose fees, in part, had been paid by AEIC. While it may be possible that some of BGR's work resulted in orders *upholding* and *enforcing* the fee award and USC's ultimate interpleading of the funds, it is simply chronologically impossible for BGR's work to have resulted in the judicial finding that Sargon prevailed on the contract or in Sargon being awarded the initial $1,801,495 in fees for doing so.

8. *Hearing and Ruling*

The trial court initially prepared a tentative ruling, indicating that BGR's motion would be granted for the reasons stated in the moving papers. The trial court took the position that AEIC's subrogation rights did not create a lien against the specific funds interpleaded. At the hearing, AEIC attempted to rely on arguments in its supplemental brief. The trial court stated that it was not considering the supplemental brief. The court stated, "The only reason those issues came up in the reply was because you raised new issues in your opposition that weren't pleaded so I'm not considering that."

AEIC argued that the very attorney bills on which the underlying trial court made its initial award of fees were the bills it had paid. The trial court responded that AEIC had not pleaded an entitlement to all of the bills it had paid, but sought only the fees

BGR's lien." But BGR was not before the court on a motion for summary judgment; BGR had not alleged the existence of a lien in its favor in its own pleading, much less established its existence. BGR could not possibly obtain judgment on the pleadings on the basis that AEIC's interest was subordinate to BGR's interest; this is precisely what must be litigated in the interpleader action.

10

which were not attributable to potentially covered claims – an allocation which had not yet been determined. At this point, AEIC sought to amend its pleading, in order to clarify that it was seeking to recover all of the fees it had paid, pursuant to the subrogation clause in its policy. When the court asked BRG to respond, BRG stated that this was a theory which had not been pleaded and, in any event, AEIC's subrogation clause was not sufficient to create a lien on the interpleaded funds.

AEIC again sought leave to amend. The court declined AEIC's request, stating that AEIC's legal theory – even the subrogation theory set forth in its opposition and supplemental opposition – was insufficient. The motion for judgment on the pleadings was granted.

9. *Notice of Appeal, Further Proceedings, and Judgment*

The order granting the motion for judgment on the pleadings was entered on August 2, 2012. AEIC filed its notice of appeal shortly thereafter.

The interpleader action was to proceed to trial, but the remaining parties settled. It was agreed that Attorney Bloom would receive $100,000; Lewis Brisbois would receive $440,000, and Sargon and BGR would jointly receive the balance of the funds. The court entered judgment accordingly, noting that AEIC received nothing as a result of the ruling on the motion for judgment on the pleadings.[18]

---

[18] The notice of appeal, from the order on the motion for judgment on the pleadings rather than the judgment itself, was premature. Under California Rules of Court, rule 8.104, subd. (d)(2), we construe it as filed immediately after entry of judgment.

11

The sole issue on appeal is whether AEIC could amend its pleading to properly allege a claim to a portion of the interpleaded funds.[19]

*DISCUSSION*

1.    *Standard of Review*

" 'A judgment on the pleadings is reviewed under the same standard by which a judgment following the sustaining of a demurrer is reviewed; the question is, assuming the truth of the pleadings, does the complaint state a cause of action. [Citation.]'  [Citation.]" (*Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 223.) When granted without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action.  [Citation.]  However, such a showing need not be

---

[19]    The parties' briefing seeks relief on issues which are simply not before this court. BGR, for example, devotes nearly seven pages of its brief to the issue of whether AEIC could recover, in this action, the attorney fees it paid in the Nowzari action,  despite the fact that AEIC, in its opening brief, conceded that those funds were "not at issue in this appeal."  For its part, AEIC requests that this court direct that judgment be entered in its favor on the supposedly undisputed evidence,  despite the fact that it never placed any evidence before the trial court or this court establishing that it actually paid the attorney fees it claims it has paid.  That the trial court may have assumed AEIC's factual assertions were true for the purpose of ruling on the motion for judgment on the pleadings does not mean that AEIC will not ultimately be required to prove its assertions.

made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386-1388.)

BGR suggests that the trial court acted well within its discretion to deny AEIC leave to amend, as the request for leave to amend was untimely. We disagree. The trial court properly considered AEIC's request for leave to amend on the merits, as do we. If it is reasonably possible that AEIC could cure the defects in its pleading by amendment, the court abused its discretion in denying AEIC an opportunity to do so.

In order to determine whether AEIC could amend its pleading to state a claim to a portion of the interpleaded funds, we will consider the law of interpleader and the law governing equitable subrogation.

2.      *Interpleader*

Code of Civil Procedure section 386 provides, in pertinent part, that "whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims."

An interpleader claimant must assert a right to the property or funds interpleaded; it is not sufficient if the interpleader claimant simply has a contract claim against one of

13

the other interpleader claimants.[20] (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1123-1124.) There is no legal requirement, however, that the claimant have a lien or ownership interest in, the interpleaded funds.[21] Indeed, as Code of Civil Procedure section 386 provides, interpleader is proper whenever conflicting claims may be made to the same property or obligation. Thus, interpleader has appropriately been brought when, for example, a trustee was allowed, by the court settling the trust estate, a particular sum for his reasonable attorney fees, and two different attorneys who had performed services for the trustee sought payment in an amount which, in total, exceeded the fees awarded. (*Sullivan v. Lusk* (1907) 7 Cal.App. 186.) In that case, the trustee interpleaded the funds awarded, and named both attorneys as claimants. One of the attorneys argued that this was an inappropriate matter for interpleader, as each attorney simply had a claim against the trustee based on contract. (*Id*. at p. 188.) The appellate court disagreed; the funds were clearly awarded to the trustee in order to compensate his attorneys. As each attorney had a claim to some or all of those funds, this was an appropriate matter for interpleader. (*Id*. at pp. 188-189.)

*City of Morgan Hill v. Brown, supra,* 71 Cal.App.4th 1114 is not to the contrary. In that case, the interpleader plaintiff, the City, owed money to a law firm. It named as

---

[20]    It is for this reason that AEIC was correct to abandon any claim based on the attorney fees it paid to defend Sargon in the Nowzari action. AEIC may have a contractual claim against Sargon for these fees, but this would not support a claim to the attorney fees interpleaded by USC.

[21]    We cannot help but notice that, although BGR argued that AEIC had to allege an ownership right in, or lien on, the interpleaded funds, BGR's pleading could not itself pass this test. BGR claimed the interpleaded funds "in order to discharge in part BGR's entitlement to fees."

14

defendants both the law firm and an attorney who had formerly worked at the firm, who had informed the City that she had an interest in the attorney fees pursuant to internal agreements with the firm. (*Id*. at p. 1120.) The appellate court concluded that this was not an appropriate matter for interpleader, as the debt claimed by the attorney was owed to her by the firm, not the City. (*Id*. at p. 1123.) The court explained, "Had [the attorney] alleged that [the f]irm assigned the [f]ees to her, or had [she] alleged that the City had also agreed, in contradiction of the City's agreement with [the f]irm, to pay [her] the [f]ees, then the situation might be different. In both those circumstances, both [the f]irm and [the attorney] would be seeking the same thing, debt or duty from the same obligor." (*Id*. at p. 1125.) It is clear that the issue was not whether the attorney asserted a *lien* on the interpleaded funds, but simply whether she had a claim to the debt the City sought to satisfy with the interpleaded fees.

### 3.   *Equitable Subrogation*

" 'Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.' [Citation.] It provides a ' " 'method of compelling the ultimate payment by one who in justice and good conscience *ought* to make it—of putting the charge where it justly belongs.' " ' [Citations.]" (*State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1105.) "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid." (*Id*. at p. 1106.) "Pursuant to the subrogation doctrine, when an insurer has paid an insured the amount of a loss caused by a third

party, the insurer may step into the shoes of the insured and pursue the insured's rights and remedies against the third party tortfeasor." (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908.)

"When an insurance company pays out a claim on a first-party insurance policy to its insured, the insurance company is subrogated to the rights of its insured against any tortfeasor who is liable to the insured for the insured's damages. [Citations.] Subrogation has its source in equity and arises by operation of law (legal or equitable subrogation). [Citation.] It can also arise out of the contractual language of the insurance policy (conventional subrogation). [Citation.] The subrogation provisions of most insurance contracts typically are general and add nothing to the rights of subrogation that arise as a matter of law. [Citation.]" (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 272.)

There are at least two ways in which an insurer can enforce its subrogation right. The subrogation right arises once the insurer pays the debt due its insured. (*Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 26.) Once the insurer has done so, it may then bring *a direct action against the responsible third party*, in order to recover the payments it made.[22] (*Allstate Ins. Co. v. Mel Rapton, Inc., supra,* 77 Cal.App.4th at p. 908.) Alternatively, the insurance company can wait until its

---

[22] However, an insurer is barred from asserting its subrogation claim directly against the third-party tortfeasor when the insured's claim is for personal injury. In those cases, if the insurer seeks to obtain direct relief from the tortfeasor, it must intervene in any action brought by its insured against the tortfeasor. (*Progressive West Ins. Co. v. Superior Court, supra,* 135 Cal.App.4th at pp. 272-273.)

insured has successfully pursued the third party tortfeasor, and then seek relief from its insured. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104.)

When the latter course of action is taken, the insurer's rights are limited by the so-called "made whole" rule. Under this rule, the subrogating insurer which does not participate in its insured's action against the responsible third-party tortfeasor can recover nothing from its insured's recovery until the insured is itself made whole for its loss. (*Progressive West Ins. Co. v. Superior Court, supra,* 135 Cal.App.4th at p. 273.) Moreover, when the insurer is seeking reimbursement from the insured out of funds obtained by the insured from the third party, the insurer must pay a pro rata share of the insured's attorney fees and costs incurred in obtaining the funds. (*Ibid.*)

4.    *AEIC Can State a Claim to the Interpleaded Funds in Equitable Subrogation*

From our discussion of the law above, it should be apparent that AEIC can state a claim to the interpleaded funds on the theory of equitable subrogation. AEIC asserts that it paid, pursuant to its insurance policy, a portion of Sargon's attorney fees incurred in defending the action brought by USC. The doctrine of equitable subrogation therefore gave AEIC a *direct right of action against USC* to recover the attorney fees for which USC was ultimately responsible. As AEIC had a direct right of action against USC for these funds, it follows that AEIC was a proper interpleader claimant when USC interpleaded the selfsame funds. Thus, we will reverse the judgment on the pleadings against AEIC.

17

Because the issue may arise on remand, we make the following observations regarding BGR's assertion of the "made whole" rule.[23] First, it is not entirely certain that the "made whole" rule applies in a case where the third party interpleads the funds. While it is true that the "made whole" rule applies when the insurer is seeking recovery from funds obtained by its insured from the third party, here, because of the interpleader, the funds AEIC is seeking are not yet in the hands of its insured.[24] Second, the "made whole" rule applies in situations where the insurer took no part in the insured's action against the tortfeasor; in this case, although AEIC was not *a party* to the action, AEIC asserts that it paid a portion of Sargon's attorney fees which resulted in the favorable outcome of USC's breach of contract action against Sargon. BGR has submitted no authority that the "made whole" rule should apply in such a case. Third, the "made whole" rule, if it applies in this case, applies only to Sargon's claim for attorney fees against USC for defending against USC's claims. That is to say, whether Sargon has been made whole for its alleged injuries it suffered at the hands of USC, or whether it has been made whole for the attorney fees expended in seeking such affirmative relief, is wholly irrelevant to AEIC's claim to the funds. The issue is simply

---

[23]    We, of course, make the preliminary observation that the "made whole" rule had no place in the argument on a motion for judgment on the pleadings. The "made whole" rule might support an argument that AEIC's recovery should be reduced; it does not, in any way, support an argument that AEIC does not have a claim against the fund which must be litigated.

[24]    For this reason, BGR's reliance on *Farmers Ins. Exchange v. Smith, supra*, 71 Cal.App.4th 660, is unpersuasive. BGR argues that, pursuant to that authority, AEIC cannot require BGR to act as its collection agent with respect to funds in BGR's hands. AEIC, however, is not seeking funds that USC paid to BGR for Sargon; it is seeking funds interpleaded by USC because USC was uncertain as to whom to pay.

whether Sargon has been made whole for the claim for which AEIC seeks subrogation –
the claim for the costs and fees incurred in defending against USC's claim. Finally, to
the extent to which BGR claims AEIC should be responsible for a share of BGR's
attorney fees, such responsibility would apply *only* to the extent that BGR's work
involved the protection or enforcement of the May 2006 attorney fee award.

## *DISPOSITION*

The judgment against AEIC is reversed and the matter remanded for further
pleadings on the interpleader. As both parties appear equally responsible for the
necessity of this appeal, each party shall bear its own costs.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.