[Civ. No. 12035.   Third Dist.   July 24, 1969.]

NOMELLINI CONSTRUCTION COMPANY, Plaintiff and Appellant, v. MODESTO SAVINGS AND LOAN ASSOCIATION et al., Defendants and Respondents.

Louis T. Arbios, Forrest E. Macomber and A. Grant Macomber for Plaintiff and Appellant.

Ronald E. Bates, William S. Gregory and Horace E. Cecchettini for Defendants and Respondents.

PIERCE, P. J.—A summary judgment was entered against plaintiff from which it appeals.

Plaintiff is the holder of a note secured by a *third* trust deed on described real property, also a judgment lien junior to that. The owners defaulted on this, and all prior, secured obligations. The trustee named in the *first* trust deed duly noticed a breach and thereafter noticed a (nonjudicial) sale of the obligations secured by that trust deed. The sale was held at the time and date prescribed in the notice. That notice specified that the sale would be to the highest bidder *for cash*. The highest bidders for cash at the sale were defendants Reeser and Hellbaum. They bid $68,000. Plaintiff submitted a twofold bid: $65,000 plus a cancellation up to $10,000 on account of the obligation secured by the third trust deed and the judgment lien. The trustee accepted the Reeser and Hellbaum bid and rejected plaintiff's bid.

On this appeal plaintiff claims its bid should have been accepted as the highest bid. In granting summary judgment the trial court held that the trustee had correctly applied the law and had followed the provisions of the first trust deed. The notice of trustee's sale provided for sale "at public auction to the highest bidder for cash."

We hold that the trial court properly granted a summary judgment for defendant. There was no justiciable issue. A bid by a junior lienholder for part cash, part credit—when the cash portion is lower than another cash bid—is a bid lower than the latter and does not comply with the cash bid requirement of the notice of sale.

Superficially, it might appear that whenever a situation exists such as that asserted by plaintiff here it would be to the best interests of all concerned with the titles and liens that a bidder be permitted to do what plaintiff did here. The effect of the transaction would be—if the assertion plaintiff now makes as to the extent of its junior lien rights is accurate—to pay off the obligation of the senior lienholders in full and to give to the original owner of the property the greatest credit on *all* obligations secured by liens—including those junior to the lien being foreclosed. That postulation overlooks several factors: (1) it "tears up" the contract which the parties

entered into—the trust deed—which requires a sale at public auction for cash; (2) from the standpoint of the trustee that is a most important provision. If he had to determine and weigh the validity and dollar value of credit bids (facing personal liability if his appraisal was wrong) his would be an onerous burden; (3) a public auction at which credit bids must be so determined and weighed would "chill the sale" so far as cash bidders are concerned and thus defeat the purpose of a public auction.

Some of these reasons are mentioned in California Continuing Education of the Bar (1960), California Land Security and Development, in the chapter Multiple Security Interests, §§ 15.4, 15.5 and 15.6. Therein it is pointed out that where the sale is held pursuant to a power of sale in a trust deed (Civ. Code, § 2924) and the bid is made by a junior lienholder who proposes to use the claimed balance of the junior paper as a part of the bid, the bid should be rejected by the trustee. (*Id.* § 15.4.) A bid by the beneficiary of a first trust deed on a sale noticed by such beneficiary is distinguished. There the three months' notice of breach and intent to sell will give the landowner-trustor an opportunity to challenge the correctness of the amount claimed. When a junior lienholder shows up at the sale and makes a credit bid, the landowner has no such opportunity. The claimed balance of the obligation due may not be the true balance. The trustee faces a dilemma—personal liability should the accepted credit bid be challenged subsequently. (*Id.* § 15.5.)

We review the cases cited by Nomellini. They do not support its argued position. In *Central Sav. Bank of Oakland* v. *Lake* (1927) 201 Cal. 438 [257 P. 521], the beneficiary of a *first* trust deed caused a sale to be held and bought in the property for the amount of the obligation due it. No cash was paid. The claim was made that the sale was void for that reason. It was held that the rule was well settled that when the holder of a first lien deed of trust bids in the property he need not tender cash which would only immediately be returned to him. We have explained above the reasons distinguishing such a bid from a credit bid made by a junior lienholder. As was said in *Witter* v. *Bank of Milpitas* (1928) 204 Cal. 570, at page 580 [269 P. 614] : "[T]he deed contained no language that commanded the trustees to require that the Bank carry to the sale a sack of cash, make its bid, obtain its deed, pay in cash, and then demand back the cash and credit it as a payment on the notes. Having determined their duty to

make a sale, the trustees had the right to conduct it as they did. The idle act of carrying around the sack of cash is not mentioned in the contract and 'the law neither does nor requires idle acts.' (Civ. Code, § 3532.) ''

*Kleckner* v. *Bank of America* (1950) 97 Cal.App.2d 30 [217 P.2d 28] (hear. den.) was a multiple lien case. There were three trust deeds, the first to the Bank of America, the second to one Wetherbee and the third to plaintiff Kleckner. There the sale was by the holder of the second trust deed under terms which called for a sale to the highest bidder for cash. At the sale a friend of the plaintiff bid the property in, but when the trustee accepted his bid as the highest bid, the friend did not produce the cash. He produced a personal check and said he would go to the bank and cash it. Plaintiff and the friend did go to the bank and returned with cash within 15 or 20 minutes. The sale had by then been concluded and the trustee had left. It was held that ''[a] sale under a power in a mortgage or trust deed must be conducted in strict compliance with the terms of the power . . . [but] must be made fairly, openly, reasonably, and with due diligence and sound discretion to protect the rights of the mortgagor and others, using all reasonable efforts to secure the best possible or a reasonable price.'' (P. 33.) The court upheld a sale to the holder of the second trust deed. It pointed out that the bidder had not disclosed that he was bidding on behalf of the holder of the third trust deed. Dictum in the case states, however, (on p. 33) : ''If the auctioneer had been advised that the bid was on behalf of the plaintiff as beneficiary under the third trust deed, to have refused a request for delay of a few minutes to go to the bank might well have been held an unreasonable exercise of the trustee's power of sale.'' But the court also said (on p. 34) : ''[T]he terms being cash, the trustee is not required to hold up the sale while sundry bidders leave the place to go to banks or elsewhere to get cash. Such conduct of a sale could well result in confusion, in the dispersal of bidders present, and in loss to persons represented by the trustee.''

The distinction between the *Kleckner* case and this one is obvious. At no time did Nomellini seek a postponement to get cash. Its bid was, in all respects here material, a credit bid—a bid which exacted a burden upon the trustee (and upon prospective cash bidders) to make a determination as to the extent and validity of a third trust deed.

We do not find *Lichty* v. *Whitney* (1947) 80 Cal.App.2d

696 [182 P.2d 582], relied upon by Nomellini, to be in point. It held that a holder of a first trust deed by buying at a trustees' sale did not acquire a valid title under the following circumstances: the holder of the second trust deed had asked the first trust deed holder the amounts due him, including all outlays to protect his lien, and tendered payment of that amount. The tender was refused. The beneficiary of the first trust deed proceeded to foreclose. The sale was set aside on equitable principles.

Nomellini also argues that because it had made a bid, the cash part of which was adequate to satisfy all prior liens, "in effect, the auctioneer then was conducting the sale for the benefit of NOMELLINI." That is not correct. He was conducting a sale in the open market place. Several bidders were present. The trust deed provisions, designed to encourage competitive bidding and thus obtain the best price obtainable were, and had to be, complied with.

As is stated in Ogden, California Real Property Law, § 17.71, page 669: "The proceeds of sale are applied, first, in payment of the costs, fees and expenses of sale, and then in satisfaction, pro tanto, of the obligation to pay which the sale was made. If the net proceeds are sufficient to fully satisfy such obligation, any balance is called surplus, and subordinate liens and rights cut off as to the property by the sale attach to these surplus proceeds of sale in their order of priority and are immediately payable therefrom, whether matured or not. (*Markey* v. *Langley* [92 U.S. 142] 23 L.Ed. 701; *Brown* v. *Campbell*, 100 Cal. 635 [35 P. 433, 38 Am.St.Rep. 314]; *Atkinson* v. *Foote*, 44 C.A. 149 [186 P. 831].)" To this statement could be added: any surplus remaining after all liens and costs are satisfied is payable to the mortgagor or trustor.

Nomellini's final argument urges an invalidity of the sale because the trustee—"the crier" of the sale—had announced that two parties had arranged credit with the beneficiary of the first trust deed—on whose behalf the sale was being held—to the end that, to the extent of that credit, their bids would be considered as cash bids. (Plaintiff was not one of such parties.) Obviously such an arrangement had the same effect as a cash bid. There is no merit to the contention.

Judgment is affirmed.

Friedman, J., and Janes, J., concurred.