[No. H003620. Sixth Dist. Dec. 16, 1987.]

PACIFIC LOAN MANAGEMENT CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
DENNIS T. ARMSTRONG et al., Real Parties in Interest.

[No. H003660. Sixth Dist. Dec. 16, 1987.]

SMALL BUSINESS ADMINISTRATION, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
DENNIS T. ARMSTRONG et al., Real Parties in Interest.

**COUNSEL**

Benjamin R. Levinson, Scott D. Hughes, Joseph P. Russoniello, United States Attorney, Judith Whetstine and Dana Sohm for Petitioners.

No appearance for Respondent.

Robert L. Mezzetti and Oscar R. Roesler for Real Parties in Interest.

**OPINION**

**BRAUER, J.**—We have consolidated for decision two petitions for writs of mandate or prohibition arising out of the same lawsuit and presenting the

issue, apparently of first impression in this state, whether a junior lienor loses his right to the surplus proceeds of an out-of-court foreclosure sale when he himself purchases the property at the sale. We have concluded that he does not, for reasons we shall state. We also have concluded that the trial court should have granted the request for interpleader by the trustee who conducted the foreclosure sale (petitioner Pacific Loan Management Corporation, hereafter PLMC) since PLMC is a mere stakeholder in the dispute between the junior lienor, petitioner United States Small Business Administration (SBA), and the trustors, real parties Dennis and Nina Armstrong (Armstrong). Accordingly writs of mandate shall issue compelling summary judgment in favor of both petitioners.

PLMC, acting as trustee on behalf of the holder of a senior lien, conducted an out-of-court foreclosure sale on Armstrong's real property located at 15450 Stetson Road, Los Gatos, in Santa Clara County. Armstrong had defaulted on an $86,000 loan due July 1, 1985. At the sale, on January 27, 1986, PLMC sold the property for $137,514.48, to the SBA. SBA had a junior lien on the property for about $50,000. After the sale, Armstrong and SBA both claimed the surplus proceeds, the sum of $31,236.65. Armstrong argued the surplus proceeds of a foreclosure sale are unavailable to discharge a junior lien when the lienor is also the purchaser at the sale.

PLMC filed a complaint in interpleader (Code Civ. Proc., § 386) seeking to interplead the surplus funds into court. It alleged that it asserts no claim to the monies and wishes to submit the dispute between Armstrong and SBA to the court for adjudication. Armstrong cross-complained against PLMC asserting causes of action for conversion, breach of fiduciary duty, negligence, abuse of process, interference with business relations, and intentional infliction of emotional distress, all allegedly arising out of PLMC's refusal to turn the surplus proceeds over to Armstrong and its action in filing an interpleader complaint.

After the trial court denied PLMC's motion to be discharged as stakeholder in the interpleader action, PLMC sought summary judgment. It contended because it asserts no claim to the surplus funds it states a classic case for interpleader; its obligation is not to resolve the dispute between Armstrong and SBA but only to deposit the money with the forum which will decide that matter. (Citing *Security Trust etc. Bank* v. *Carlsen* (1928) 205 Cal. 309, 315-317 [271 P. 100, 60 A.L.R. 630].)

Armstrong opposed summary judgment on these grounds: (1) the matter is res judicata because of the previous denial of PLMC's motion to be discharged as stakeholder; (2) the pendency of the cross-complaint asserts liability against PLMC and therefore defeats its right to discharge.

Armstrong's declarations did not assert any facts showing PLMC guilty of fraud, collusion, or other misconduct. Nina Armstrong's declaration merely recited the history of the events leading up to foreclosure. The cross-complaint and the opposition to summary judgment rest solely on the proposition that PLMC is liable simply because it chose to file interpleader and refused to adjudicate the dispute between the claimants itself and in favor of Armstrong.

SBA sought summary judgment declaring its right to the surplus proceeds of the foreclosure sale. The trial court denied the motion by an order which recites that SBA is not entitled to the proceeds because a junior purchasing at the senior's sale is not entitled to both the property and the satisfaction of his junior obligation. The order also says no reasonable explanation was provided for SBA's overbid, and the court cannot do equity when it does not know whose hands are clean.

## I. RIGHT TO INTERPLEADER

First, there is little justification for the proposition that a party is not entitled to interpleader because another party asserts an independent claim against him, particularly since the 1951 amendment to the interpleader statute allowing partial interpleader. (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 263, p. 321.) The statute in its present form, Code of Civil Procedure section 386, subdivision (b), requires only that the stakeholder file a verified pleading disclaiming any interest in the money or property claimed. It is the stakeholder's avowed disinterest in the interpleaded proceeds which gives him the right to interplead. If a claimant of these funds also has an independent right of action against the stakeholder, he is free to sue him separately. There is no contention here that, even if PLMC were guilty of the torts charged, the surplus proceeds of the foreclosure sale would be available as a fund from which to satisfy this indebtedness.

In fact, even before the several amendments which have broadened the scope of the interpleader remedy, cases made clear that a typical situation suitable for interpleader is that where a disinterested escrow holder faces conflicting claims to the escrowed property. Although some decisions did express the idea that the stakeholder must not have incurred "independent liability" to any of the claimants (see discussion in 4 Witkin, *supra,* § 268, at p. 326), a close examination of these decisions shows that interpleader is not defeated because either claimant asserts the stakeholder's duty to deliver the property to him. That breach of duty is not the kind of independent liability which prevents interpleader; if it were, few cases would qualify for the remedy. The true test of suitability for interpleader is the stakeholder's disavowal of interest in the property sought to be interpleaded, coupled

with the perceived ability of the court to resolve the entire controversy as to entitlement to that property without need for the stakeholder to be a party to the suit. " '[I]f the relations of the parties are such that the court's decision would determine the responsibility of the escrow-holder, he is for the purposes and within the scope of the code section authorizing interpleader a mere stake-holder.' " (*Security Trust etc. Bank* v. *Carlsen, supra,* 205 Cal. 309, 314; accord, *Hancock Oil Co.* v. *Hopkins* (1944) 24 Cal.2d 497, 505-506 [150 P.2d 463].)

Accordingly, typical situations permitting interpleader include a bank escrow holder faced with conflicting claims of vendor, purchaser and purchaser's assignee (*Security Trust etc. Bank* v. *Carlsen, supra,* finding no independent liability of the bank to exist simply because a claimant asserted the bank's liability to deliver the funds to him); an escrow holder of a fund where one claimant notified the escrow holder that the contract was cancelled and nothing should be paid to the other claimant (*Continental Nat. Bank* v. *Stoltz* (1920) 46 Cal.App. 532, 534 [189 P. 712]); and an insurance company admitting liability under a life insurance policy where conflicting claims to the proceeds existed (*Union Mutual Life Ins. Co.* v. *Broderick* (1925) 196 Cal. 497, 500 [238 P. 1034]).

The following language from *Security Trust etc. Bank* v. *Carlsen, supra,* is apposite here: "The fact that the bank had bound itself to perform these obligations did not necessarily prevent it from availing itself of the section . . . . In general, every mere stakeholder has assumed some obligation to those interested or owning the property held by him. His obligation is to deliver the property held by him to the party entitled thereto. But when a disagreement arises as to the ownership of said property, the holder thereof has not obligated himself to *settle said disagreement* and deliver the property to either of said parties in the face of conflicting claims thereto." (205 Cal. at p. 316, italics added; see 4 Witkin, *supra,* § 268 at p. 327.)

So here, PLMC's obligation to deliver the surplus proceeds following foreclosure sale to the party entitled thereto cannot reasonably be construed to include an obligation to resolve competing claims to that property by the debtor and a junior lienor, particularly where, as shall be demonstrated, the correct resolution of those claims is far from obvious.

There is no authority for Armstrong's contention that the law and motion judge's denial of the motion to be discharged as stakeholder is res judicata on the merits of PLMC's claim to interpleader relief. This contention does not form the basis of the trial court's ruling below and deserves no further mention, other than to point out its inconsistency with the definition of res judicata as resulting from full litigation of a question on the merits.

(See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgments, § 217, p. 223, and cases there cited.)

## II. SUMMARY JUDGMENT ON ARMSTRONG'S CROSS-COMPLAINT

██  Further, PLMC is entitled to summary judgment on Armstrong's cross-complaint. There is no authority for the proposition that PLMC's attempt to submit this dispute to a judicial tribunal, as expressly authorized by statute, can in itself be a tort. Presumably the use of the interpleader procedure could be an abuse of process if it were clear beyond dispute that Armstrong had an immediate right to the funds. But instead, Armstrong's right to the funds is anything but plain, and indeed we have concluded, as we shall discuss, *infra,* that SBA as junior lienor is the party entitled to claim the surplus. But focusing only on the precedent available to PLMC when it sought interpleader, it appears that many cases hold that a sold-out junior lienor (as SBA here) may satisfy his debt from the surplus proceeds of the senior lienor's foreclosure sale. (E.g., *Caito* v. *United California Bank* (1978) 20 Cal.3d 694, 701 [144 Cal.Rptr. 751, 576 P.2d 466]; *Sohn* v. *California Pac. Title Ins. Co.* (1954) 124 Cal.App.2d 757, 766 [269 P.2d 223]; *Nomellini Constr. Co.* v. *Modesto S. & L. Assn.* (1969) 275 Cal.App.2d 114, 118 [79 Cal.Rptr. 717]; *Dockrey* v. *Gray* (1959) 172 Cal.App.2d 388, 391 [241 P.2d 746].) This equitable principle derives from the decision in *Markey* v. *Langley* (1876) 92 U.S. 142, 155 [23 L.Ed. 701, 705], holding that "The liens of the mortgages and the mechanics' lien attached to the proceeds of the sales in the same manner, in the same order, and with the same effect, as they bound the premises before the sales were made." SBA's claim to the surplus proceeds was ahead of Armstrong's claim; the debtor may only claim surplus funds after discharge of all liens against the property. (See cases cited *supra*; 2 Ogden on Real Property (Cont.Ed.Bar 1975) § 18.36, pp. 964-965; 1 Miller & Starr, Cal. Real Estate, § 3:120, at pp. 541-542.)  ██  As one authority says, "If there are surplus proceeds remaining after the satisfaction of the obligation, they are payable to junior lienors in the order of their priority. If there are no junior liens, or if an excess still remains after they have been satisfied, the remaining proceeds are paid to the *trustor.*" (1 Miller & Starr, *supra,* at pp. 541-542, original italics, fns. omitted.)

██  In contrast to the apparent strength of SBA's claim, there is no precedent holding that SBA loses its right to the surplus proceeds because it was the purchaser at the foreclosure sale. No California authority appears to have focused directly on this issue.

We will discuss in Part III of this opinion whether SBA or Armstrong is entitled to the surplus proceeds of the foreclosure sale. However, for present

purposes we have demonstrated that the question presents a difficult problem in the law of real property, with no easy solution. Further, if under the available precedent any party appeared to have a reasonable claim to the surplus proceeds, that party was SBA, not Armstrong. How, then, could PLMC be held accountable in tort because it declined to resolve that problem and instead tendered the funds into court? We know of no authority, and Armstrong cites none, for such a result. Nor do the Armstrong declarations set out any facts to show actionable misconduct by PLMC other than the simple act of tendering the funds into court in interpleader, a perfectly proper and statutorily available procedure to resolve conflicting claims to the property which do not involve the stakeholder.

Armstrong's claim that the trustor's right to the surplus is so patent that the trustee had no legitimate choice but to turn the property over to Armstrong immediately or be held accountable for conversion and other torts is a frivolous assertion.

Summary judgment should have been granted to PLMC on the Armstrong cross-complaint.[1]

### III. SBA's Claim to the Surplus

■   The issue is whether SBA's status as buyer at the foreclosure sale should cut off its right as junior lienor to have its debt satisfied out of the surplus.

There is no apparent a priori reason why SBA's established right to have its debt discharged out of the proceeds of the security should in any way be diminished because it has chosen, out of its pocket, to invest in this property. SBA had a secured debt, and is entitled to established remedies regarding that debt, including collection of the unpaid balance out of the surplus proceeds of foreclosure. (See decisions cited, *ante,* part II, e.g., *Caito* v. *United California Bank, supra,* 20 Cal.3d 694, 701.) Absent fraud or collusion, which would be independently actionable, we see no inequity in this result.

The two closest decisions appear to be *Investcal Realty Corp.* v. *Edgar H. Mueller Constr. Co.* (1966) 247 Cal.App.2d 190 [55 Cal.Rptr. 475], and

---

[1] PLMC submitted a declaration, uncontradicted, saying it is normal practice in the industry to interplead surplus funds when multiple demands are asserted. At least one authority recommends the practice. (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 6.28, p. 286: "If there is any doubt about who or how much should be paid, the trustee should interplead the proceeds into court for judicial determination. An erroneous payment may subject the trustee to liability to any party suffering from the error." The text cites *Atkinson* v. *Foote* (1919) 44 Cal.App. 149 [186 P. 831].) Since the right to interpleader is patent here as a matter of law, we do not rest our decision on PLMC's declaration.

*Dickey* v. *Williams* (1966) 240 Cal.App.2d 270 [49 Cal.Rptr. 529], both cited in footnote 6 of the decision in *Walter E. Heller Western, Inc.* v. *Bloxham* (1985) 176 Cal.App.3d 266, 273 [221 Cal.Rptr. 425]. As noted in *Heller,* each of these decisions involved a junior lienholder who held two parcels of real property as security, purchased the first parcel at the senior's sale, and was allowed to satisfy his debt from the surplus at the remaining sale.

For instance in *Dickey,* plaintiff's decedent (P) owned property in San Francisco and in Sonoma. There were two liens on the Sonoma property and one lien on the San Francisco property when defendant loaned P $25,000 secured by junior liens on both properties. When the first trust deed holder foreclosed on the San Francisco property, defendant bought it at the out-of-court sale. Later the first trust deed holder on the Sonoma property foreclosed on that parcel, and it was sold to a third party. The second foreclosure generated a surplus. P contested defendant's right to have his unpaid obligation discharged out of that surplus because defendant had been the purchaser at the first sale. The court held defendant was entitled, as any junior lien holder, to have the surplus applied to his unpaid loan before the owner was entitled to any proceeds. The court said: "Plaintiff's intestate [P] suffered no greater detriment than if a complete stranger had purchased at the senior's sale, and defendant had no advantage unavailable to a stranger. He could not use the debt secured by his third encumbrance as a part of the purchase price. The fact that defendant bought the property for cash at a public sale in no way distinguishes him from the sold out junior lienholder in *Roseleaf.*" (*Dickey* v. *Williams, supra,* 240 Cal.App.2d at p. 272, referring to the decision in *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97].)

The reasoning in *Dickey* plainly implies the conclusion that the junior lienholder does not lose his equitable claim to be paid out of the surplus proceeds simply because he happens to be the purchaser at the foreclosure sale. *Dickey* differs from the problem here only in that the purchaser there sought to satisfy his lien out of a surplus generated from a foreclosure on a different property than the parcel he purchased. Why should the result be different when, as here, he seeks the surplus from the foreclosure on the property which he purchases? In either instance, the junior lienor's equitable right to the surplus turns on the nature of his debt—a *secured* debt—which, after foreclosure, attaches to the security in its transmuted form as proceeds. Since, unlike the senior lienor, the junior cannot use his lien as a credit bid, he obtains no unfair leverage in the auction nor other advantage such as would make inequitable his claim to the surplus to satisfy his debt.

Armstrong argues that SBA now has the property, may sell it at a profit, and will not have to account to Armstrong for that profit. Therefore it is not

equitably entitled to the surplus. This conclusion does not follow. SBA has no legal duty, as a general proposition, to account to Armstrong for the profits of its investments. Nor do we perceive any unfairness in these facts such as would give rise to any equitable duty in SBA to account for such hypothetical profit. Whether SBA, or a third party (X), bought the property, Armstrong would be in precisely the same position: the property would belong to another, and Armstrong would no longer be liable for the debts which were discharged in the foreclosure sale. Whether SBA or X is the owner of the property makes no difference so far as Armstrong's economic position is concerned.

Armstrong claims the matter is controlled by the decision in *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d 266. That case holds a junior lienor who purchases at the senior's sale is subject to the fair value limitations of Code of Civil Procedure section 580a, which statute limits the amount of any recoverable deficiency judgment to the amount by which the indebtedness on the property exceeds its fair market value on the day of sale. (Accord, *Bank of Hemet* v. *United States* (9th Cir. 1981) 643 F.2d 661, followed in *Heller.*) The court reached this conclusion to avoid what it perceived as an otherwise unfair result, namely, that the junior lienor could by making a low bid increase the size of its recoverable deficiency judgment and also theoretically receive valuable property more than sufficient to offset the amount of the lien. The *Heller* court viewed such a result as a species of double recovery.

The *Heller* decision rests on the tacit assumption that a foreclosure sale auction frequently results in a sale below the fair market value of the property. We express no opinion on whether that is a justified assumption or whether such an assumption should legitimately control the decision to apply the anti-deficiency provisions of Code of Civil Procedure section 580a to a junior lienor purchaser.[2] For present purposes, however, it is clear that *Heller* does not deal with the disposition of the surplus proceeds resulting from the junior lienor's own overbid. Nor does *Heller* address the general issue whether status as purchaser should affect an equitable right to the surplus. The principle of *Heller* is to prevent double recovery resulting from an *underbid* below market value: to the extent the junior is enriched *by his*

---

[2] We note that under the California Uniform Commercial Code, a secured party who sells the collateral after default may purchase at a public sale without losing his right to a deficiency judgment. (See Cal. U. Com. Code, § 9504, subd. (3).) He may also do so at a private sale where there is an established market or price for the commodity. (*Ibid.*) A foreclosure sale of real estate clearly satisfies all these conditions. We perceive no ready justification for distinguishing the two kinds of security foreclosures. In both cases, no presumption of unfair advantage should result simply because the secured party purchases the collateral, when prescribed statutory safeguards are met.

*own underbid,* his loss on the unsatisfied debt is less, and his right to a deficiency judgment, at least arguably, ought to be diminished in that amount.

Here, however, we are not yet measuring what deficiency judgment, if any, SBA may collect against Armstrong. We deal instead with the surplus generated by SBA's own overbid, a fund actually provided with cash out of SBA's pocket. If SBA receives the surplus, clearly that amount will reduce its debt, thus reduce any potential deficiency judgment, and no double recovery will occur.[3]

For SBA to trace its $50,000 loan into the $31,000 surplus which it has itself generated and which it would be otherwise entitled to (had it not purchased) is neither double recovery nor unfair. SBA was a secured creditor; the surplus replaces its claim to $50,000 secured by the property. We conclude SBA is entitled to summary judgment on its claim.

Real parties in interest have been notified that peremptory writs in the first instance could be issued here, and have filed opposition. We will issue a peremptory writ of mandate in each case in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

## DISPOSITION

Let peremptory writs of mandate issue as prayed, in both these matters, as follows: in the matter of *Pacific Loan Management Corp.* v. *Superior Court,* the respondent court is directed to vacate its orders denying interpleader and summary judgment and instead shall order interpleader on behalf of Pacific Loan Management Corp. and summary judgment in its favor on the cross-complaint of the Armstrongs. In the matter of *United States Small Business Administration* v. *Superior Court,* the respondent court is directed to vacate its denial of summary judgment and instead shall order summary judgment to be entered in favor of United States Small

---

[3] It is possible that SBA will not be entitled to any deficiency judgment because of the fair value limitations of Code of Civil Procedure section 580a as interpreted in *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d 266. Armstrong alleges that the fair market value of the property on the day of the sale was between $350,000 and $375,000, and the encumbrances totalled $285,000, including SBA's $50,000 encumbrance and a lien of $85,000 discharged by the foreclosure. (A senior lien of about $150,000 remains on the property.) If these facts are correct, SBA took an equity of roughly $370,000 less $150,000 or $220,000, well in excess of its unsatisfied $50,000 debt, so it would have no right to a deficiency judgment.

Business Administration and against the Armstrongs. Our temporary stay of further proceedings shall remain in effect until this opinion is final. PLMC and SBA shall have costs as the prevailing parties herein.

Agliano, P. J., and Stone, J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied April 21, 1988. Mosk, J., and Kaufman, J. were of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.