## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMERICAN FIRST CREDIT UNION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PLATINUM PROPERTIES INVESTOR NETWORK, INC., et al., <br><br> Defendants and Appellants. | G064901 <br><br> (Super. Ct. No. 30-2022-01255653) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on March 24, 2026, be modified as follows:

1.     On page 16, first incomplete paragraph, after last sentence that ends in "we do not address the legal merits of its argument," add the following footnote:

In a rehearing petition, Platinum Entities claim that none of the appellate briefs discussed the theory that they made an "alleged tacit admission of ROI's claim." They contend rehearing is required under Government Code section 68081, so they can brief this theory. However, there is no "right under

[Government Code] section 68081 to . . . be granted a rehearing each time an appellate court relies upon authority or employs a mode of analysis that was not briefed by the parties. The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised *or fairly included within the issues raised* does not implicate the protections of section 68081." (*People v. Alice* (2007) 41 Cal.4th 668, 679, italics added.) The theory highlighted by Platinum Entities was fairly included within the issues raised by their opening brief. For example, they argued "[Platinum] LLC was the *only* party with a present possessory right to the interpleaded funds at the time this action was commenced." (Italics added.) Evaluating this argument required analyzing whether ROI had a present claim to the levied funds.

This modification does not change the judgment.

The petition for rehearing is DENIED.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| AMERICAN FIRST CREDIT UNION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PLATINUM PROPERTIES INVESTOR NETWORK, INC., et al.,<br><br>    Defendants and Appellants. | G064901<br><br>(Super. Ct. No. 30-2022-01255653)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on March 24, 2026, be modified as follows:

1.  On page 1, delete "(Super. Ct. No. 30-2022-01255635)" and replace with "(Super. Ct. No. 30-2022-01255653)" in its place.

This modification does not change the judgment.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMERICAN FIRST CREDIT UNION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PLATINUM PROPERTIES INVESTOR NETWORK, INC., et al.,<br><br>Defendants and Appellants. | G064901<br><br>(Super. Ct. No. 30-2022-01255635)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Michael J. Strickroth, Judge. Affirmed.

Diefenbach Law Group and James C. Diefenbach for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

\* \* \*

This appeal challenges the trial court's orders (1) finding that plaintiff credit union had the right to file this interpleader action, (2) discharging the credit union from this proceeding, and (3) awarding the credit union attorney fees. It arises from a $233,498.54 judgment that defendants ROI Property Group Management, LLC and ROI Property Group 2, LLC (collectively, ROI) obtained against defendant Platinum Properties Investor Network, Inc. (Platinum Inc.), which is a subsidiary of defendant Platinum Properties Investor Network, LLC (Platinum LLC). Both Platinum Inc. and Platinum LLC are run by Jason Hartman.

ROI sought to levy one of Platinum Inc.'s bank accounts at plaintiff American First Credit Union (American First). American First withdrew $233,498.54 (plus a $40 writ fee) from the account of Platinum LLC rather than Platinum Inc. Hartman discovered this error and then engaged in two contradictory actions. He demanded that American First return the levied funds to Platinum LLC's account. American First then reached out to ROI to facilitate return of the levied funds. However, ROI provided American First with proof that Hartman had told ROI to apply the levied funds to satisfy the judgment ROI had against Platinum Inc. In other words, Hartman wanted to have his cake and eat it too: he sought to allow ROI to keep the levied funds in satisfaction of Platinum Inc.'s judgment debt while demanding that American First reimburse Platinum LLC for the amounts taken.

Despite the confusion, American First asked ROI to return the levied funds, but ROI asserted the levy was proper because Platinum Inc. was either the alter ego of Platinum LLC or had fraudulently conveyed the funds to Platinum LLC to avoid paying the judgment. ROI only agreed to return the levied funds to American First if it filed this interpleader action.

2

American First agreed and filed this action after receiving the funds from ROI.

In this appeal, Platinum Inc. and Platinum LLC (collectively, Platinum Entities) primarily argue the trial court incorrectly ruled that American First was entitled to file this interpleader action. The thrust of their argument is that the levied funds clearly belonged to Platinum LLC, and American First should have returned them rather than forcing Platinum Entities into this litigation. However, this argument overlooks Hartman's role in creating confusion over the funds' ownership by both seeking their return and having them credited to the judgment against Platinum Inc. As another court has opined, "in litigation as in life, you can't have your cake and eat it too." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555.)

Platinum Entities also contend the trial court erred by denying them a full evidentiary hearing on American First's right to interplead. However, they have not cited any authority showing they were entitled to such a hearing. Nor have they shown any prejudice from the alleged error.

Finally, Platinum Entities claim that the trial court erred by discharging American First from this action and awarding it attorney fees. They claim the relevant statutes do not allow for a plaintiff to be discharged and awarded fees. We disagree. Existing case law has rejected Platinum Entities' argument, and they have failed to adequately explain why this case law is incorrect.

For these reasons, we affirm the relevant orders.

FACTS AND PROCEDURAL HISTORY

I.

LEGAL BACKGROUND

"When a person may be subject to conflicting claims for money or property, the person [(known as a stakeholder)] may bring an interpleader action to compel the claimants to litigate their claims among themselves. [Citation.] Once the person admits liability and deposits the money with the court, he or she is discharged from liability and freed from the obligation of participating in the litigation between the claimants." (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1122, fn. omitted.) "The effect of such an order is to preserve the fund, discharge the stakeholder from further liability, and to keep the fund in the court's custody until the rights of the potential claimants of the monies can be adjudicated." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42–43.)

"The purpose of interpleader is to prevent a multiplicity of suits and double vexation. [Citation.] 'The right to the remedy by interpleader is founded, however, not on the consideration that a [person] may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability.'"[1] (*City of Morgan Hill v. Brown, supra,* 71 Cal.App.4th at p. 1122.)

"[T]he interpleader proceeding is traditionally viewed as two lawsuits in one. The first dispute is between the stakeholder and the claimants to determine the right to interplead the funds. The second dispute

---

[1] Double vexation means the interpleading plaintiff could face multiple claims from the defendants over the thing, debt, or duty at issue. (See *Placer Foreclosure, Inc. v. Aflalo* (2018) 23 Cal.App.5th 1109, 1115–1116.)

4

to be resolved is who is to receive the interpleaded funds." (*Dial 800 v. Fesbinder, supra,* 118 Cal.App.4th at p. 43.)

## II.

### FACTUAL BACKGROUND

*A. The Levied Funds*

Platinum LLC is a Wyoming limited liability company that functions as a holding company. One of its subsidiaries is Platinum Inc., a California corporation that operates a nationwide real estate referral network. Hartman is the manager of Platinum LLC and the chief executive officer of Platinum Inc.

American First is a credit union that is authorized to conduct business in California. Hartman opened separate bank accounts at American First for Platinum LLC and Platinum Inc.

In December 2021, ROI obtained a $233,498.54 judgment (the *Fuller* judgment) against Platinum Inc., in a case entitled *Platinum Properties Investor Network, Inc. v Fuller, et al.*, case No. 30-2018-00974280 (the *Fuller* action). The record contains a declaration from ROI's counsel, James E. Heffner (the Heffner declaration). The Heffner declaration states that after entry of the *Fuller* judgment, Heffner spoke with Platinum Inc.'s counsel and Hartman directly.[2] They both informed Heffner that Platinum Inc. did not have the funds to pay the *Fuller* judgment and offered to settle "for amounts at and around $50,000."

---

[2] The record contains several direct communications between Hartman and Heffner. It appears that Platinum Entities' counsel authorized Heffner to speak with Hartman directly.

5

ROI obtained a writ of execution on the *Fuller* judgment, which identified Platinum Inc. as the judgment debtor. The Orange County Sheriff (the sheriff) served a notice of levy on American First. However, American First identified Platinum LLC's account as the subject of the levy instead of Platinum Inc.'s account.

On January 20, 2022, American First sent Platinum LLC a letter stating that it had received a notice of levy from the sheriff and that it would withdraw $233,498.54 from Platinum LLC's account on January 28, 2022.[3] The letter was sent to an address in Florida that was listed on the account's bank statements. American First received no response, so it paid $233,498.54 to the sheriff on January 28 (the levied funds).

B. *Dispute over the Levied Funds*

Platinum LLC did not receive American First's letter before the levy occurred. It learned of the levy on February 4, 2022, when an attempted transaction was rejected for insufficient funds. Hartman contacted American First, learned of the withdrawal, and informed American First that the withdrawal was unauthorized. American First asked Hartman to contact the sheriff. It is unclear whether Hartman contacted the sheriff, but he continued to ask American First to restore the funds to Platinum LLC's account.

The funds were not restored, so Hartman filed a Consumer Complaint Form with the California Department of Financial Protection and Innovation on February 9, 2022 (the consumer complaint). Hartman complained that American First had levied the wrong account. He asked that American First "return our $233,498.54 + interest/opportunity cost and legal costs immediately or we will be forced to litigate."

[3] A $40 fee was added for issuing the writ of execution.

However, the day after filing the consumer complaint, Hartman took a markedly different position on the levied funds. In an e-mail to Heffner (the February 10 e-mail), he claimed the levied funds had satisfied the *Fuller* judgment and asked Heffner to file a satisfaction of judgment in the *Fuller* action. The February 10 e-mail reads, "Congrats on your collection! . . . Please file a satisfaction judgement, notify the court [in the *Fuller* action] and withdraw your motions. Please email copies to me. Also, I'm curious as to why the hearing was held last week when you had already been notified that the levy was collected." Significantly, Hartman did not state that American First had levied the wrong bank account.

On February 11, 2022, two days after Hartman filed the consumer complaint, Platinum Inc.'s counsel informed Heffner that he would apply ex parte for a satisfaction of the *Fuller* judgment if ROI did not credit Platinum Inc. for the levied funds. Heffner replied that he had not yet received the levied funds and ROI intended to acknowledge their receipt. Again, Platinum Inc.'s counsel did not tell Heffner that the funds had been levied from the wrong account.

American First called Heffner on February 14, 2022, and told him Platinum LLC was claiming that the levied funds had been taken from the wrong bank account and was threatening litigation if they were not returned. The Heffner declaration states that "[a]t no time prior to this call from [American First] did Mr. Hartman or his various counsel inform ROI that the [levied] funds were taken from the wrong account or that they were threatening [American First] if the funds were not returned."

Heffner then e-mailed Platinum Inc.'s counsel. He explained that the sheriff had not yet delivered the levied funds, but "I am informed that your client is claiming the sheriff levied on the wrong account. The bank and

7

account were identified because that is where [Platinum Inc.] has deposited checks written out to it in the past. I am not aware of why Platinum claims the levied account is incorrect." Heffner also expressed confusion as to why Hartman had asked him to file a satisfaction of the *Fuller* judgment while insisting that American First return the levied funds. Thus, he asked whether "***Platinum [Inc.] is claiming the funds were improperly levied upon such that it seeks their return***."

Platinum Inc.'s counsel responded the same day. He stated, "I have been back and forth with the client on this, so let me clarify this for all. For purposes of resolving [the *Fuller* action], *we are not protesting the amount/funds levied here. . . .* [W]e are not asking for that money and expect such amounts to be reflected as we move forward with trying to resolve this." (Italics added.)

Heffner replied, "Thank you for . . . confirming [Platinum Inc.] is not seeking the return of funds levied by the sheriff. I emailed because [American First] asked for the return of funds today. My office will inform [American First] that we will not return the funds and that Platinum is not claiming they must be returned." With permission of Platinum Inc.'s counsel, Heffner shared with American First the above e-mail from Platinum Inc.'s counsel that the levy was not contested. American First then asked Hartman to withdraw the consumer complaint.

However, the Heffner declaration states that Platinum Inc.'s counsel informed Heffner on February 16, 2022, "that Platinum LLC intended to sue [American First] for return of the Levied Funds despite offering to allow ROI to keep them in full settlement of disputes with ROI." Platinum Inc.'s counsel denied Heffner's request to indemnify ROI from any

8

"claims by [American First] arising from Platinum LLC's litigation against it." Nor would Platinum LLC waive its claims against American First.

On February 17, 2022, American First sent a letter to Heffner stating it had taken funds from Platinum LLC's account instead of Platinum Inc.'s account. It requested that Heffner return the funds to the sheriff to correct the error. The letter also advised that Hartman was disputing the levy and intended to take legal action.

Heffner then e-mailed American First's counsel, Alana Anaya. Heffner attached the February 10 e-mail, in which Hartman had directed Heffner to file a satisfaction of the *Fuller* judgment. Heffner noted that "Hartman's attorney" had threatened to file an ex parte motion to credit the levied funds to the *Fuller* judgment. He also cited the other statements set forth above by Hartman and Platinum Inc.'s counsel that ROI could keep the funds in satisfaction of the *Fuller* judgment. Heffner explained that he had directed the sheriff to the levied account because Platinum Inc. had deposited checks there. Thus, Heffner believed the levied funds belonged to Platinum Inc. regardless of the named account holder.

Heffner continued to engage in settlement discussions directly with Hartman regarding the levied funds and other issues between ROI and Platinum Inc. These settlement discussions included terms allowing ROI to keep the levied funds, a cessation of enforcement efforts to collect on the *Fuller* judgment, and a pause on interest accruing on the *Fuller* judgment, among others. These discussions were still ongoing through the beginning of April 2022.

While these settlement discussions were ongoing, Hartman continued to demand that American First return the levied funds to Platinum LLC's account. For instance, in an e-mail sent on March 3, 2022, Hartman

9

told Anaya that "[w]e are really trying to avoid litigation but we cannot wait much longer, we need [Platinum LLC's] account replenished immediately." Anaya was also in contact with Heffner, who kept her apprised of the settlement progress between ROI and Platinum Entities.

On March 16, 2022, Heffner informed Anaya that settlement discussions between ROI and Hartman were "breaking down because [Hartman] insists on recouping the money from [American First] while also agreeing my client can keep it. With [ROI] making a claim on the [levied funds], what is the process for providing it to [American First] to be interplead and how can I assure [ROI] the funds will not simply be provided to Platinum LLC?"

Anaya replied that the levied funds would be placed in a segregated account and then deposited with the court. She then asked whether ROI was interested in resolving this issue through an interpleader action.

On April 6, 2022, Heffner tentatively agreed that an interpleader action should be filed. However, he sought assurances from American First that it would file the interpleader action and not return the levied funds to Platinum LLC's account. He asked for a statement that American First understood there was a dispute over the levied funds and would interplead them.

Two days later, Anaya sent Heffner a letter confirming that American First "agree[d] to interplead the funds with the Orange County Superior Court levied from the account held in the name of [Platinum LLC] related to your firm's collection of a judgment against debtor [Platinum Inc]."

Heffner informed Hartman of his intent to return the levied funds to American First so it could file an interpleader action. He explained,

"[r]egarding the funds levied upon by the sheriff, I expect to have those filed with the Court by the end of next week. I believe that is the proper response to competing claims by Platinum LLC and [ROI]."

Months later, in November 2022, Platinum LLC filed a lawsuit in Wyoming against American First asserting various tort and contract claims allegedly arising from the levied funds.[4]

C. *The Interpleader Complaint*

American First filed this interpleader action and deposited the levied funds with the trial court in April 2022.

ROI cross-complained against Hartman, Platinum Entities, and another entity believed to be controlled by Hartman (the cross-complaint). Generally, the cross-complaint alleged that Platinum Inc. had fraudulently transferred funds to Platinum LLC to avoid paying the *Fuller* judgment. It also claimed that Platinum LLC and Hartman were the alter egos of Platinum Inc. and liable for the *Fuller* judgment.

Shortly after filing the cross-complaint, Heffner sent American First a demand letter claiming it was the rightful owner of the levied funds (the demand letter). The demand letter asserted the levy was proper because the levied funds had been fraudulently conveyed from Platinum Inc. to Platinum LLC. The letter also noted that ROI had only returned the levied funds to American First under the express condition that they would not be given to Platinum LLC absent a court order. Accordingly, "[i]f the Court returns the Levied Funds to [American First], they must be returned to ROI. Failure to do so will result in an action by ROI against [American First] for various claims, including breach of contract."

---

[4] The current status of this case is unclear from the record.

11

American First filed the operative first amended complaint in September 2022 (the interpleader complaint), which named ROI and Platinum Entities as defendants (collectively, Defendants). The interpleader complaint alleged that Defendants were asserting "multiple, conflicting claims" on the levied funds that would subject American First "to double liability and double vexation with this interpleader action." The interpleader complaint cited Platinum LLC's demand for the levied funds, including Hartman's consumer complaint. It also attached the February 10 e-mail, in which Hartman claimed the levied funds satisfied the *Fuller* judgment and instructed Heffner to file a satisfaction of judgment. The interpleader complaint also noted the cross-complaint's allegations that (1) Hartman had made fraudulent transfers between Platinum LLC and Platinum Inc., and (2) the Platinum Entities were alter egos of each other.

The trial court overruled Platinum Entities' demurrer to the interpleader complaint.

### D. The Interpleader Ruling

A hearing on American First's right to interplead the levied funds occurred on October 20, 2023. At the hearing's outset, Platinum Entities requested a full evidentiary hearing in which they could examine witnesses. The court denied this request and limited the hearing to the evidence included with the parties' briefs. Based on this evidence, the court held American First had the right to interplead the levied funds (the interpleader ruling).

The court found American First was a disinterested stakeholder. It was undisputed that American First had no claim to the levied funds while ROI and Platinum LLC had each made competing claims to them.

12

The court also concluded American First had shown it was subject to double vexation. Platinum LLC had already sued American First in Wyoming over the levied funds. ROI also had claims against American First based on (1) its agreement with American First to return the levied funds only if it filed this interpleader action, and (2) its position that the levied funds could be used to satisfy the *Fuller* judgment based on alter ego or fraudulent conveyance. In support, the court cited the demand letter, in which ROI had threatened to sue American First if it returned the funds to Platinum LLC absent a court order.

E.  *Attorney Fees and Discharge*

After the trial court found the interpleader action was appropriate, American First moved to be discharged from this action and also moved for $27,949.75 in attorney fees and cost. Platinum LLC opposed both requests.

While the above motions were pending, it appears that ROI and Platinum Entities reached a settlement. ROI withdrew its answer to the interpleader complaint and withdrew its claim to the interpleaded funds. It also concurrently dismissed the cross-complaint with prejudice.

The trial court granted American First's request for attorney fees and discharged it from the action (the discharge order). It later entered an order disbursing the interpleaded funds (the disbursal order). The disbursal order noted that given ROI's notice of withdrawal and dismissal of the cross-complaint, only Platinum LLC had a claim to the levied funds. Thus, the court deducted $27,979.75 from the levied funds for American First's attorney fees and ordered that the remaining balance be sent to Platinum LLC's counsel.

13

Platinum Entities appeal the discharge order and the disbursal order. They claim the trial court erred by (1) finding American First had the right to interplead the levied funds, (2) awarding American First attorney fees, (3) discharging American First from this proceeding, and (4) denying them a full evidentiary hearing.[5]

No respondent's brief was filed.

DISCUSSION

I.

RIGHT TO INTERPLEAD

"The trial court's ruling is presumed to be correct on appeal, and the burden is on the appellant to affirmatively show error." (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.) We review the trial court's factual findings for substantial evidence and its legal conclusions de novo. (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1169.) Under the former standard, "we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)

Platinum Entities make three arguments as to why the interpleader action was improper. First, Defendants did not seek the same thing, debt, or duty. Second, American First was not a disinterested

---

[5] Platinum Entities also claim the trial court erred by overruling their demurrer to the interpleader complaint. But none of their arguments specifically address the court's demurrer ruling. Nor does their notice of appeal include the order overruling the demurrer. Thus, we will not address the court's demurrer ruling. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679, fn.8.)

14

stakeholder. Third, American First was not threatened with double vexation. These arguments are unpersuasive.

## A. *Same Thing, Debt, or Duty*

To maintain a valid interpleader action, "the claimants [must] seek the same thing, debt, or duty." (*City of Morgan Hill v. Brown*, *supra*, 71 Cal.App.4th at p. 1123.) "If the claims do not relate to the same thing, debt, or duty, then interpleader is improper. [Citation.] '[T]he very rationale of interpleader compels the conclusion that [Code of Civil Procedure section 386] does not allow the remedy where each of the claimants asserts the right to a different debt, claim or duty.'"[6] (*Ibid*.) This standard is met because Defendants all asserted claims on the levied funds.

However, Platinum Entities contend "[i]t is undisputed that [Platinum LLC] was the only party with a present possessory right to the interpleaded funds at the time this action was commenced." They maintain ROI had no present right to the levied funds because it had not yet litigated its alter ego or fraudulent transfer theory. Thus, "ROI's right to the funds, if any existed, was a contingent, future interest."

Platinum Entities' argument is belied by the record, specifically the actions of Hartman and Platinum Inc. While Hartman was demanding that American First return the levied funds to Platinum LLC, he was also insisting that they satisfied Platinum Inc.'s obligations under the *Fuller* judgment. Indeed, over a year after American First filed this interpleader action, Platinum Inc. filed a motion to compel satisfaction of the *Fuller*

---

[6] Undesignated statutory references are to the Code of Civil Procedure.

judgment in the *Fuller* action.[7] By attempting to use the levied funds to satisfy the *Fuller* judgment, Hartman and Platinum Inc. tacitly admitted that ROI had a credible, present claim to the levied funds. Thus, when this action was filed, it was not undisputed that only Platinum LLC had a present possessory interest in the interpleaded funds. Because Platinum Entities' argument is premised on an inaccurate factual predicate, we do not address the legal merits of its argument.

## B. *Disinterested Stakeholder*

Next, Platinum Entities assert American First was not a true disinterested stakeholder. (*Pacific Loan Management Corp. v. Superior Court* (1987) 196 Cal.App.3d 1485, 1489 ["It is the stakeholder's avowed disinterest in the interpleaded proceeds which gives him the right to interplead"].) Rather, they claim American First is "a full-fledged adversary in a lawsuit for draining [Platinum] LLC's account of the very proceeds that [American First] deposited in the interpleader action, scheming with ROI to keep funds from LLC, and unlawfully disclosing financial details about LLC in the process." They further argue that American First filed this "sham interpleader for the purpose of skirting liability for [its] own wrongdoing."

Platinum Entities' argument is based on a gross distortion of the record. Examining the evidence in the light most favorable to American First, the record shows Hartman was largely responsible for the conflict at issue. Hartman demanded that American First return the levied funds to Platinum

---

[7] Platinum Inc.'s motion to compel satisfaction of the *Fuller* judgment was denied. The trial court explained, "[Platinum Inc.] urges this Court to compel ROI to file a satisfaction of judgment even though [Platinum Inc.] claims the funds paid towards that judgment do not belong to ROI and were wrongfully levied. This argument defies common sense."

16

LLC while simultaneously claiming that they satisfied the *Fuller* judgment owed to ROI. Due to his actions, American First was reasonably unsure of the levied funds' proper owner. Its correspondence with Heffner was not part of a "scheme." Rather, we can reasonably infer that American First corresponded with ROI in an attempt to identify the funds' proper owner. It eventually determined that an interpleader action was necessary.

More importantly, Platinum Entities have failed to cite any evidence showing that American First ever asserted an interest in the levied funds. The evidence only shows that it sought to transfer the levied funds to their proper owner. As such, Platinum Entities have failed to show that American First was not a disinterested stakeholder. (*Farmers New World Life Ins. Co. v. Rees* (2013) 219 Cal.App.4th 307, 320 [interpleading plaintiff that "never claimed in interest in the funds" was a disinterested stakeholder].)

*C. Double Vexation*

"The right to the remedy of interpleader is founded on the consideration that a person is threatened not just with double liability, but with double vexation in respect to one liability. [Citation.] An interpleader action, however, may not be maintained 'upon the mere pretext or suspicion of double vexation; [the plaintiff] must allege facts showing a reasonable probability of double vexation' [citation], or a 'valid threat of double vexation.'" (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 608.) Platinum Entities make several arguments as to why American First did not face double vexation. None are convincing.

It is undisputed that Platinum LLC had claims against American First based on the levied funds. While Platinum Entities contend that Platinum Inc. "ma[de] no claim against the funds," this is inaccurate. As set

17

forth above, Platinum Inc. claimed the levied funds satisfied its obligations under the *Fuller* judgment.

American First also faced viable claims from ROI. ROI claimed the levied funds had been fraudulently conveyed from Platinum Inc. to Platinum LLC to avoid payment of the *Fuller* judgment. It only returned the levied funds to American First under an agreement that American First would file this interpleader action so the court could determine their proper owner. American First faced a potential breach of contract claim from ROI if it returned the levied funds to Platinum LLC instead of interpleading them.[8]

In response, Platinum Entities argue that the contract between American First and ROI lacked consideration because ROI was legally compelled to return the funds. In support, it cites a portion of the court's ruling in the *Fuller* action denying Platinum Inc.'s motion to compel satisfaction of the *Fuller* judgment. In denying the motion, the court explained, "ROI was legally compelled to return the levied funds as those funds were improperly taken from [Platinum LLC]."

This argument is unpersuasive. First, Platinum Entities have not explained why the court's finding in the *Fuller* action has any bearing in this interpleader action. Second, ROI and American First entered into their contract over a year before the *Fuller* court's statement above. At the time, it was unclear whether ROI was required to return the levied funds. Indeed, Hartman and Platinum Inc. were claiming that ROI should apply the levied

---

[8] Platinum Entities also appears to argue that it was inequitable to allow American First to enter into a contract with ROI for return of the levied funds and then use that contract to establish double vexation. But, as we explain in the next section, we find no inequity given the circumstances of this case.

funds to satisfy the *Fuller* judgment. As such, ROI could reasonably believe it had no legal obligation to return the levied funds when contracting with American First. Platinum Entities have not explained why there was insufficient consideration under these facts.

Next, Platinum Entities assert that American First had fully performed its contract with ROI after filing the interpleader action. Thus, it faced no viable breach of contract claim after filing this lawsuit. However, the record indicates that under their contract, American First was obligated to return the levied funds to ROI if the interpleader action was dismissed and the funds were returned to American First. Thus, the contract was not fully complete when American First filed the interpleader action.

## D. *Unclean Hands*

Platinum Entities claim the unclean hands doctrine barred American First from seeking interpleader relief. Specifically, they claim American First levied the wrong account and then brought this action to avoid liability. American First's actions do not warrant application of this doctrine.

"'[I]nterpleader is an equitable proceeding in which the rights of the parties, as between themselves, are governed by principles of equity.'" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1513.) Unclean hands is a defense "'available in legal as well as equitable actions.' [Citation.] However, 'the unclean hands doctrine is not a legal or technical defense to be used as a shield against a particular element of a cause of action. Rather, it is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim. It is available to protect the court from having its powers used to bring about an inequitable result in the litigation before it.' [Citation.] 'The

19

doctrine promotes justice by making a plaintiff answer for his own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits of his transgression."'" (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 685.)

Allowing American First to bring an interpleader action does not create an inequitable result. While American First may have levied the wrong account, it was Hartman's actions following the levy that led to this interpleader action. After Hartman informed American First that it had levied the wrong account and demanded return of the levied funds, American First learned that he was also seeking to use the levied funds to satisfy the *Fuller* judgment. Based on these contradictory actions, American First was understandably unsure of the levied funds' proper owner. Thus, it reasonably filed this interpleader action to allow the court to make that determination.

## II.

### AMERICAN FIRST'S DISCHARGE AND ATTORNEY FEES

Platinum Entities contend that under the relevant statute, section 386, only a defendant can be discharged from an interpleader action. Likewise, since American First could not be discharged, the court erred by awarding it attorney fees. (§ 386.6, subd. (a) [the court may award attorney fees "[i]n ordering the discharge of [a] party"].)

This argument has been rejected by another appellate court. In *Southern California Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477, 492, one of the defendants argued that "the court lacked authority to discharge [the interpleading plaintiff] from the Interpleader Action because *section 386* does not authorize such a discharge." The appellate court disagreed. It explained, "[t]o the contrary, *section 386.6, subdivision (a)* authorizes the court to discharge the interpleading party and award attorney fees *before* a final

20

judgment in the action." (*Ibid.*, first italics added.) Platinum Entities have not explained why this holding is incorrect, and we will not make the argument for them. (*City of Riverside v. Horspool, supra*, 223 Cal.App.4th at p. 679, fn.8.)

Platinum Entities also maintain that the trial court abused its discretion in awarding American First attorney fees because it forced Platinum LLC to litigate this case instead of returning the levied funds. They provide no authority stating that an award of fees under such circumstances is an abuse of discretion. Further, as discussed above, it was reasonable for American First to file this interpleader action. Thus, we find no abuse of discretion.

## III.

### EVIDENTIARY HEARING

Finally, Platinum Entities assert the lower court erred by denying them a full evidentiary hearing that included witness examination. But they cite no authority entitling them to such procedures. Platinum Entities cite *Lincoln Nat. Life Ins. Co. v. Mitchell* (1974) 41 Cal.App.3d 16, 19–20, which states that "'[t]he first step is a trial or hearing by the court on the issue of the plaintiff's right to interplead. If the proof is sufficient . . . , the court makes an *interlocutory order*. This directs the plaintiff stakeholder to deposit the amount or deliver the property, and requires the defendant claimants to interplead and litigate their claims among themselves.'" Nothing in this passage reasonably pertains to the right to call witnesses at a hearing on a plaintiff's right to interplead.

Further, even if Platinum Entities were correct that the trial court erred by denying them a full evidentiary hearing, they have not shown any prejudice. They have failed to explain how a more favorable result might

have resulted had the court allowed them such a hearing. (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.)

## DISPOSITION

The discharge order and the disbursal order are affirmed. Platinum Entities shall bear their own costs on this appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.